UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 1:24-cr-221 (TNM) |
| JEFFREY FORTENBERRY, | |
| *Defendant.* | |

## GOVERNMENT'S MOTION FOR PROTECTIVE ORDER

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves the Court for entry of a protective order governing discovery in this case. As explained below, the proposed order will help expedite the production of discovery while safeguarding important government and third-party interests.

The government has sought to resolve this matter with the defense. While the parties have reached agreement on most of the proposed order, the defense objects to a specific provision that would limit the Defendant's ability to take custody of certain sensitive materials. As explained below, good cause exists to restrict the Defendant's ability to physically possess materials containing otherwise non-public sensitive and cooperator information stemming from a broad criminal investigation of acts and entities that go beyond the specific allegations against the Defendant. The government therefore requests entry of the proposed protective order in its entirety.

## I. RELEVANT BACKGROUND

### a. The Current Charges and Broader Investigation

The Defendant, Jeffrey Fortenberry, previously served as the United States Representative for Nebraska's first congressional district. On May 8, 2024, a federal grand jury in the District of Columbia returned a two-count indictment charging him with: a concealment scheme, in violation

1

of 18 U.S.C. § 1001(a)(1); and making false statements, in violation of 18 U.S.C. § 1001(a)(2). The Indictment alleges that the Defendant's unlawful actions were meant to hide his receipt and knowledge of illicit foreign and conduit contributions that were funneled to his campaign at a 2016 fundraiser in Los Angeles, California.

The government learned of the fundraiser through a much broader investigation. A year before the event, agents with the Federal Bureau of Investigation (FBI) and Internal Revenue Service (IRS) had begun investigating foreign national Gilbert Chagoury, a Nigerian-born billionaire of Lebanese descent, for potential violations of, among other things, the Federal Election Campaign Act (FECA) and the Foreign Agents Registration Act (FARA). As part of that probe, dubbed "Operation Titan's Grip," the federal government investigated: multiple schemes and transactions to funnel foreign money to government officials; the involvement of Chagoury's private associates in that conduct; the potentially corrupt relationships between Chagoury and the recipient public officials; and the steps anyone involved took to conceal such activity. Much of the information concerning the broader investigation—while relating to some of the same players who funneled illicit contributions to the Defendant—is not specifically related to the Defendant's charged conduct, and only some the information obtained through the investigation has been made public.

"Individual H" began cooperating with the broad federal investigation in 2016. Individual H was an associate of both Chagoury and a United States citizen named Toufic Baaklini. As part of his cooperation, Individual H informed the government that earlier that year Chagoury arranged to funnel $30,000 of his money to the Defendant's campaign through Baaklini, and that Baaklini in turn provided those funds to Individual H. Individual H then hosted the 2016 Los Angeles

fundraiser for the Defendant, during which people recruited by Individual H to act as conduits contributed Chagoury's money to the Defendant's campaign.

In 2018, the Defendant reached out to Individual H to ask him to host another fundraiser. In a June 2018 call that was surreptitiously recorded at the FBI's direction, Individual H and the Defendant discussed the request. During that conversation, Individual H repeatedly told the Defendant that, prior to the 2016 fundraiser, Baaklini had given $30,000 in cash to contribute to the Defendant, and that the $30,000 in cash "probably did come from Gilbert Chagoury."

In March 2019, federal investigators approached the Defendant at his residence in Lincoln, Nebraska. During the ensuing interview, the Defendant denied knowledge of any foreign or conduit contributions to his campaign. At the Defendant's request, he was again interviewed in Washington, D.C. in July 2019. In that interview, with his counsel present, the Defendant again denied knowledge of any foreign or conduit contributions to his campaign.

   b.  *The Prior Proceedings*

The Defendant was previously charged and tried in the Central District of California. *See generally United States v. Fortenberry*, Case No. 21-cr-491 (SB) (C.D. Cal.) (hereinafter the "prior proceeding").[1] In March 2022, following a seven-day trial, a jury convicted him on all counts. The Defendant appealed. On December 26, 2023, the Ninth Circuit found that the Central District of California did not have venue over the matter and reversed the conviction. *See United States v. Fortenberry*, 89 F.4th 702 (9th Cir. 2023).

---

[1] The Defendant was charged with three offenses in the prior proceeding. In addition to the two violations alleged here in the District of Columbia, in the prior proceeding the Defendant was charged with an additional false statement count focused specifically on the statements he made to federal investigators during the 2019 interview at his home in Nebraska.

Notably for the purposes of this Motion, in the prior proceeding, the parties agreed to a proposed protective order. *See* "Stipulation and Joint Request For a Protective Order Regarding Discovery Containing Sensitive and Personal Identifying Information and Cooperating Witness Information," *United States v. Fortenberry*, Case No. 21-cr-491 (SB) (C.D. Cal. Oct. 27, 2021), ECF No. 12. The court there issued the requested order. *Id.*, ECF No. 13.[2]

The agreed-upon protective order in the prior proceeding noted that "At no time, under no circumstance, will any Cooperator Materials be left in the possession, custody, or control of defendant, regardless of defendant's custody status." *Id*. at Para. 5(g). The order also prevented "Cooperator [and] Sensitive Materials" from being left "outside the Defense Team's offices, homes, vehicles, or personal presence." *Id*. at Para. 5(j). Other similar provisions limited the Defendant's ability to possess certain information.

At no point in the over two years between the entry of the agreed-upon protective order in the prior proceeding and the Ninth Circuit's decision did the Defendant move to modify or amend the terms of the prior protective order.

## II.     THE REQUESTED PROTECTIVE ORDER

To expedite the discovery process in this case while safeguarding important government and third-party interests, the government seeks entry of a protective order.

The government's proposed protective order is attached to this Motion as Attachment A (the "Proposed Order"). The Proposed Order follows a template that has been entered—often with both parties' consent and without modification—in many cases in this District. This includes

---

[2] For the Court's convenience, the order from the prior proceeding is enclosed as Attachment B.

prosecutions related to the January 6, 2021 attack on the U.S. Capitol and other cases in which defendants are released to their homes in other jurisdictions pending trial.[3]

After the government learned that the Defendant had obtained new counsel, the government shared the Proposed Order with the defense in the hopes of initiating discovery and sharing material from the prior proceeding.

Counsel for the Defendant has informed the government that it consents to the majority of the Proposed Order, but objects to its entry unless one provision is struck. Specifically, the Defendant opposes proposed Para. 8, which regards the storage of sensitive or cooperator materials. The proposed provision states:

> **8.     Storage of Sensitive or Cooperator Materials.**  Sensitive or Cooperator materials must be maintained in the custody and control of the legal defense team. Defense counsel may show Sensitive or Cooperator materials to the defendant as necessary to assist in preparation of the defense, however, defense counsel may not provide a copy of Sensitive or Cooperator materials to the defendant. Moreover, if defense counsel does show Sensitive or Cooperator materials to the defendant, defense counsel may not allow the defendant to write down any personal identity information as identified in Rule 49.1 of the Federal Rules of Criminal Procedure, or other identifying information, including telephone numbers, email addresses, driver's license numbers, and similar unique identifying information, that is contained in the Sensitive or Cooperator materials. If the defendant takes notes regarding Sensitive or Cooperator materials, defense counsel must inspect those notes to ensure that the defendant has not copied down personal identity information, including the categories set forth in this paragraph.

The condition is appropriate and necessary in this case. Having failed to reach agreement on this provision, the government respectfully moves the Court for entry of the Proposed Order, including proposed Para. 8.

---

[3] To track how discovery was previously marked and produced in the prior proceeding, the government added a "Cooperator Materials" designation that tracks the general and frequently applied dictates for "Sensitive Materials" in this District's template language.

### III.   RELEVANT LEGAL PRINCIPLES

Criminal discovery is largely governed by Fed. R. Crim. P. 16.  The rule "requires the Government to produce, upon the defendant's request, any documents and data that are material to preparing the defense."  *United States v. Dixon*, 355 F. Supp. 3d 1, 3-4 (D.D.C. 2019) (McFadden, J.) (citing Fed. R. Crim. P. 16(a)(1)(A)-(G)).  Rule 16 also allows courts to issue protective orders upon a showing of good cause.  *Id.* (citing Fed. R. Crim. P. 16(d)).

As the party seeking a protective order, the government "bears the burden of showing that good cause exists for its issuance."  *Id.* (citing *United States v. Johnson*, 314 F. Supp. 3d 248, 251 (D.D.C. 2018)).  The government's showing must be "particularized" and "specific."  *Id.* (citing *United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012)).  Though "the level of particularity depends on the nature and type of protective order at issue."  *Id.*

Protective orders can be "necessary to facilitate speedy disclosure to the defense while safeguarding sensitive information."  *United States v. McCaughey*, 534 F. Supp. 3d 132, 142 (D.D.C. 2021) (McFadden, J.).  This is in part because they "are expressly designed to assure that a defendant's right to a fair trial [is] not overridden by the confidentiality and privacy interests of others."  *Id*. at 138 (citing *United States v. O'Keefe*, No. 06-cr-0249 (PLF), 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007)).

### IV.   ARGUMENT

There is good cause for the Court to issue the Proposed Order because it will facilitate speedy disclosures to the Defendant while safeguarding sensitive information.  Several unique factors—including the prior proceeding and broader investigation that led to the government's knowledge of the 2016 fundraiser—make the Proposed Order, including Para. 8, particularly appropriate and properly scoped to this specific case.

Proposed Para. 8 will only apply to materials that: (1) are not already or become part of the public record; (2) do not pertain solely to the Defendant; and (3) include sensitive or cooperator materials. This is because Para. 9 of the Proposed Order provides for certain "automatic exclusions from [the] Order." Under that provision, any materials that have been or become part of the public record are excluded from the Order. The provision also excludes from the Order any materials that pertain solely to the defendant.

Because there was already a public trial in this case, and because the case centers on a series of allegedly false statements made by the Defendant, many materials relevant to the defense are likely to be exempt from the Proposed Order. Even when materials are not excluded and designated as Sensitive or Cooperator—and thus subject to proposed Para. 8—the provision will still allow the Defendant to view the records. He will just not be permitted to possess them; just as he was prohibited from taking custody of such materials in the prior proceeding.

With respect to what will remain covered by the Proposed Order, the good cause for including proposed Para. 8 in this case involves a particular and specific need to guard against improper or inadvertent public dissemination of materials that implicate significant government and third-party interests.

Some of the discovery in this case involves non-public sensitive and cooperator information (including personal identity information) derived from the broader Operation Titan's Grip investigation. This material contains information about alleged domestic and international misconduct, including allegations of potential wrongdoing by individuals who have never been publicly charged with crimes and personal information about potential witnesses to such acts. Very good cause exists to protect that material from inappropriate or inadvertent disclosure, and preventing the Defendant from maintaining copies of such records in his private home in Nebraska

while he awaits trial is eminently reasonable. *Cf. United States v. Cudd*, 534 F. Supp. 3d 48, 54-55 (McFadden, J.) (materials that include personal identity information about individuals that are not related to the criminal conduct in the case at hand were worthy of protection under a protective order).

The government understands that defense counsel's objection to proposed Para. 8 emanates from a concern that not being able to send covered records to the Defendant at his home in Nebraska will impede their ability to prepare the defense, despite being able to show such covered records to the Defendant through other means (*e.g.* by videoconference). This concern does not negate the good cause shown for applying proposed Para. 8 to this matter.

As this Court has noted, "There is nothing *per se* improper with limiting the material defense counsel can provide to his client." *Dixon*, 355 F. Supp. 3d at 7 (citing *United States v. Cordova*, 806 F.3d 1085, 1090-91 (D.C. Cir. 2015) (finding no prejudice in district court's protective order prohibiting defendants from keeping Jencks Act paperwork in their possession)). The limitation is particularly suitable in this case since the material the Defendant would be prohibited from taking custody of involves identifying information of uncharged individuals or otherwise unknown government cooperators and witnesses who could face significant public scrutiny or undue embarrassment were their connection to the broader investigation known. The proposed limitation is also considerate of the Defendant's interests since he would still be allowed to view such sensitive or cooperator information—and he would still be allowed to move the Court for a modification of the Proposed Order if the condition ends up actually unreasonably impeding his ability to prepare his defense.

## V.      CONCLUSION

As explained above, there is good cause to enter the Proposed Order.  To expedite the provision of discovery in this case while safeguarding important government and third-party interests, the government respectfully requests that the Court issue the Proposed Order in its entirety, including proposed Para. 8.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:     */s/ Timothy Visser*
TIMOTHY VISSER (DC Bar No. 1028375)
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2590
timothy.visser@usdoj.gov

MACK E. JENKINS (Cal. Bar No. 242101)
Special Assistant United States Attorney
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
(213) 894-2091
mack.jenkins@usdoj.gov