UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>v.<br><br>**JEFFREY FORTENBERRY**,<br><br>Defendant. | Case No. 24-cr-221 (TNM) |

### MEMORANDUM ORDER

Defendant Jeffrey Fortenberry, a former congressman, faces charges related to his alleged receipt of illicit campaign contributions. With discovery underway, the Government moves for a protective order limiting the use, dissemination, and reproduction of sensitive information. Fortenberry consents to the bulk of the proposed order. But he objects to one provision that would prohibit his attorneys from providing him copies of sensitive or cooperative materials. Since the Court finds that the Government has shown good cause for this provision, it will grant the motion and issue its proposed protective order.

I.

Fortenberry's prosecution stems from a broader investigation into illegal campaign contributions made by Nigerian-born billionaire Gilbert Chagoury. *See* Indictment ¶¶ 1, 3, ECF No. 1. As the indictment tells it, Fortenberry attended a fundraiser in 2016 where he received $30,000 in campaign donations from Chagoury, funneled indirectly through individual donors. *Id*. ¶ 12.

Two years later, Fortenberry called the host of the 2016 fundraiser—"Individual H"—to ask if he would host another. *Id.* ¶ 15. By this point, Individual H was cooperating with federal investigators. *Id.* ¶ 14. On the call, Individual H allegedly told Fortenberry that the $30,000 he

received at the 2016 fundraiser was "probably" from Chagoury.  *Id.* ¶ 16.  Despite being told of these illegal contributions, Fortenberry did not file an amended report with the Federal Election Commission regarding the 2016 fundraiser.  *Id.* ¶ 17.  Nor did he try to disgorge the illegal contributions.  *Id*.

Fortenberry was first indicted in the Central District of California on one count of scheming to falsify and conceal material facts in violation of 18 U.S.C. § 1001(a)(1), and two counts of making false statements in violation of 18 U.S.C. § 1001(a)(2).  A jury convicted Fortenberry on all counts.  But the Ninth Circuit reversed the conviction, holding that the Central District was the wrong venue for the matter.  *United States v. Fortenberry*, 89 F.4th 702, 713 (9th Cir. 2023).  Fortenberry was then indicted in the District of Columbia on one count of scheming to falsify and conceal material facts and one count of making false statements.  Indictment, ¶¶ 19–22.

The Government now seeks a protective order to safeguard important government and third-party interests.  *See* Gov't Mot. for Protective Order (Gov't Mot.), ECF No. 8.  Fortenberry consents to most of the proposed order; he objects only to a provision that bars his attorney from providing him copies of sensitive or cooperating materials or permitting him to possess such materials.  *See* Gov't Proposd Protective Order (Protective Order) ¶ 8, ECF No. 8-1; Def.'s Opp'n to Mot. (Opp'n) at 1, ECF No. 12.  The basis for this objection is geographical.  Defense counsel is based in Washington, D.C., and lives in Northern Virginia; Fortenberry lives in Nebraska.  Distance thus makes sharing sensitive or cooperator information difficult without transferring custody of the materials or providing copies.  *See* Opp'n at 2–3.  Fortenberry claims the proposed protective order will impede the preparation of his case unless he can review

2

sensitive and cooperator materials on his own, without his counsel's physical or virtual presence. *See id*.  The Government's motion is ripe for adjudication.

## II.

Under Federal Rule of Criminal Procedure 16, the Government is required "to produce, upon the defendant's request, any documents and data that are material to preparing the defense." *United States v. Dixon*, 355 F. Supp. 3d 1, 3 (D.D.C. 2019) (citing Fed. R. Crim. P. 16(a)(1)(A)–(G)).  Under this rule, "the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d).  In other words, the Court may issue a protective order upon a showing of good cause.  *See Dixon*, 355 F. Supp. 3d at 4.

The Court considers three factors when assessing good cause:  "whether (1) disclosure of the materials in question would pose a hazard to others; (2) the defendant would be prejudiced by a protective order; and (3) the public's interest in disclosure outweighs the possible harm." *Id*.  "[O]nce a showing of good cause has been made, the court has relatively unconstrained discretion to fashion an appropriate protective order." *United States v. Johnson*, 314 F. Supp. 3d 248, 251 (D.D.C. 2018); *see also Alderman v. United States*, 394 U.S. 165, 185 (1969) ("[T]he trial court can and should" issue protective orders "where appropriate.").

Because the Government is the party seeking a protective order, it bears the burden of justifying its request with good cause.  *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015).  Its justification must be "particularized" and "specific," bearing in mind that "the level of particularity required depends on the nature and type of protective order at issue." *Dixon*, 355 F. Supp. 3d at 4 (cleaned up).

### III.

The Government has carried its burden here.

*First*, the unfettered "disclosure of the materials in question would pose a hazard to others." *Dixon*, 355 F. Supp. 3d at 4. According to the Government, Fortenberry's prosecution is just one part of the investigation into Chagoury's unlawful campaign contributions. *See* Mot. at 2. Given the breath of this investigation, discovery contains information about "allegations of potential wrongdoing by individuals who have never been publicly charged with crimes and personal information about potential witnesses to such acts." *Id*. at 7. To illustrate the significant personal privacy interests at stake, the Government provided sealed exhibits containing examples of the sensitive and confidential investigatory material that it seeks to protect. Having reviewed these exhibits, the Court finds that their disclosure—or the disclosure of similar materials—would substantially affect the privacy and reputational interests of both witnesses and individuals subject to investigation who have not been publicly charged with crimes. *Accord Dixon*, 355 F. Supp. 3d at 5 (finding that the "the privacy and safety rights of the victim and witnesses" justified protective order).

Fortenberry contends the Government's purported harm is too broad and speculative to justify limiting his access to sensitive information. *See Johnson*, 314 F. Supp. 3d at 251 ("[B]road allegations of harm . . . do not support a good cause showing."). The Court disagrees. The Government's harm here is specific and concrete: permitting Fortenberry to possess sensitive and cooperator material implicates the privacy interests of identified individuals who are either witnesses or uncharged subjects of the investigation. And the "specific examples" provided by the Government's sealed exhibits amply support this alleged harm. *See id*. Unlike

his attorneys, Fortenberry is not an officer of the Court, nor does he bear the same duties of care and responsibility that they shoulder.

*Second*, the proposed order will not significantly prejudice Fortenberry. *See Dixon*, 355 F. Supp. 3d at 4. True, the protective order may inconvenience Fortenberry and defense counsel. But requiring defense counsel to screenshare sensitive information rather than provide copies for Fortenberry to review on his own hardly amounts to material prejudice. *Accord United States v. Cudd*, 534 F. Supp. 3d 48, 55 (D.D.C. 2021) (protective order's limitation on defendant's "ability to have unfettered access to some discovery" not prejudicial). The Court anticipates Fortenberry and his attorneys would likely meet in person occasionally anyway as the trial date approaches. And as the Government notes, as this case has already gone to trial once, much of the discovery material is already in the public record and would not be subject to the protective order. *See* Protective Order ¶ 9 (automatically excluding materials that "[a]re, or later become, part of the public record, including materials that have been received in evidence in this or other public trials or hearings"). So the number of relevant documents here is presumably quite limited.

Of course, if this turns out not to be correct and more voluminous discovery of sensitive or cooperator information is required, Fortenberry may seek modification of this order. *See id*. ¶ 11 (permitting parties to seek modification); *cf. United States v. Smith*, 985 F. Supp. 2d 506, 546 (S.D.N.Y. 2013) ("None of this means that Defendants will not be able to challenge the designation of certain documents, or otherwise request a modification of the Protective Order should circumstances change."). But as it stands, the Court is satisfied that the proposed order is narrow enough to avoid material prejudice to him.

*Third*, "any public interest in the materials covered under the protective order will not be harmed by its issuance." *United States v. McCaughey*, 534 F. Supp. 3d 132, 142 (D.D.C. 2021). The order excludes information that has, or will become, part of the public record. *See* Protective Order ¶ 9. And any interest the public may have in the sensitive or cooperator information is outweighed by the substantial privacy interests at stake.

## IV.

For these reasons, it is hereby

**ORDERED** that the Government's [8] Motion for Protective Order is GRANTED.

**SO ORDERED**.

Dated: June 27, 2024              TREVOR N. McFADDEN, U.S.D.J.