UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**JEFFREY FORTENBERRY,**<br><br>*Defendant.* | Criminal No. 1:24-cr-221 (TNM)<br><br>Oral Argument Requested |

**CONGRESSMAN FORTENBERRY'S MOTION
TO DISMISS COUNT ONE OF THE INDICTMENT
FOR FAILURE TO STATE AN OFFENSE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

LEGAL STANDARD .......................................................................................................................... 2

ARGUMENT ....................................................................................................................................... 4

I.      To State An Offense, Count 1 Of The Indictment Must Allege A Legally-Cognizable Duty To Disclose. ........................................................................................ 4

II.     Count 1 Fails To Allege A Legally-Cognizable Duty To Disclose. ................................. 4

      A.     Count 1 Does Not Allege a Duty to Disclose to Federal Investigators. .................. 5

      B.     There Is No Duty to Disclose to Federal Investigators. ............................................ 5

      C.     A Candidate Has No Duty to Amend Prior FEC Filings. ......................................... 7

CONCLUSION .................................................................................................................................. 10

# TABLE OF AUTHORITIES

## CASES

*Bronston v. United States*, 409 U.S. 352 (1973) ............................................................................5

*Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735 (D.C. Cir. 1995) ................................................2

*Daramy v. Atty. Gen. of the U.S.*, 365 F. App'x 351 (3d Cir. 2010) ..............................................2

*Dunn v. United States*, 442 U.S. 100 (1979)..................................................................................3

*FEC v. Gus Savage for Congress '82 Committee*, 606 F. Supp. 541 (N.D. Ill. 1985) ...................8

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) ....................................................7

*McBoyle v. United States*, 283 U.S. 25 (1931) ..............................................................................3

*Russell v. United States*, 369 U.S. 749 (1962) ............................................................................2, 3

*UAW v. Donovan*, 756 F.2d 162 (D.C. Cir. 1985) .........................................................................2

*United States v. Burroughs*, 810 F.3d 833 (D.C. Cir. 2016).........................................................2

*United States v. Guertin*, 581 F. Supp. 3d 90 (D.D.C. 2022) .......................................................3

*United States v. Harra*, 985 F.3d 196 (3d Cir. 2021) ...................................................................4

*United States v. Pickett*, 353 F.3d 62 (D.C. Cir. 2004).................................................................2

\**United States v. Safavian*, 528 F.3d 957 (D.C. Cir. 2008)................................................. passim

*United States v. Saffarinia*, 424 F. Supp 3d 46 (D.D.C. 2020)..................................................4, 5

\**United States v. Singhal*, 876 F. Supp. 2d 82 (D.D.C. 2012)..........................................5, 6, 7, 10

## OTHER AUTHORITIES

U.S. Const. amend. V.................................................................................................................1, 2, 3

U.S. Const. amend. VI ...............................................................................................................1, 2, 3

18 U.S.C. § 1001 .....................................................................................................................1, 4, 5, 6

\*Federal Election Campaign Act (FECA), 52 U.S.C. § 30101 *et seq.* ................................1, 2, 7, 8

11 C.F.R. § 100.3 ...............................................................................................................................7

11 C.F.R. § 100.5 ...............................................................................................................................7

11 C.F.R. § 101.1 ......................................................................................................................... 8

11 C.F.R. § 101.2 ......................................................................................................................... 8

11 C.F.R. § 102.7 ......................................................................................................................... 7

11 C.F.R. § 102.9 ......................................................................................................................... 8

11 C.F.R. § 102.12 ....................................................................................................................... 8

11 C.F.R. § 102.13 ....................................................................................................................... 8

11 C.F.R. § 104.1 ......................................................................................................................... 8

11 C.F.R. § 104.7 ......................................................................................................................... 9

Pub. L. No. 92-225, tit. III, 86 Stat. 3 (Feb. 7, 1972) ................................................................... 9

Pub. L. No. 96-187, tit. I, 93 Stat. 1339 (Jan. 8, 1980) ................................................................ 9

H.R. Rep. 96-422 (Sept. 7, 1979) ................................................................................................. 9

Congressman Fortenberry, through undersigned counsel, respectfully moves to dismiss Count 1 of the Indictment for failure to state an offense, and respectfully requests oral argument on this motion under Local Criminal Rule 47(f).

## INTRODUCTION

The Grand Jury Clause of the Fifth Amendment and the Notice Clause of the Sixth Amendment require that an indictment allege every element of the offense and provide a defendant with notice of the charges. Furthermore, the Due Process Clause of the Fifth Amendment requires that existing law provide fair notice of what conduct is forbidden.

Count 1 of the Indictment purports to charge a concealment offense in violation of 18 U.S.C. § 1001(a)(1), alleging that Congressman Fortenberry, in two interviews with federal criminal investigators from the United States Department of Justice ("DOJ") and the Internal Revenue Service ("IRS"), concealed information about campaign contributions received years earlier. *See* Indict. ¶ 1 (identifying federal investigators); *id.* ¶ 19.a-e (identifying information Congressman Fortenberry allegedly concealed); *id.* ¶ 21.a (alleging "interview with federal investigators on March 23, 2019"); *id.* ¶ 21.b (alleging "interview on July 18, 2019, by federal investigators"). A legally-cognizable duty to disclose is an element of a violation of § 1001(a)(1). *See, e.g.*, *United States v. Safavian*, 528 F.3d 957, 964 (D.C. Cir. 2008). Count 1 is constitutionally-defective for the following reasons: (a) it fails to allege a legal duty to disclose to federal investigators; (b) there is no legal duty to disclose to federal investigators, *see id.*, and imposing one in a criminal case would violate due process; and (c) although Count 1 alleges a duty to amend prior reports submitted to the Federal Election Commission ("FEC"), *see* Indict. ¶ 9, neither a candidate, nor his campaign, has any such duty under the Federal Election Campaign Act

(FECA), 52 U.S.C. § 30101 *et seq.*, and imposing one in a criminal case would violate due process. *See Safavian*, 528 F.3d at 965.[1]

## LEGAL STANDARD

The Grand Jury Clause of the Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. This requirement is designed to limit a defendant's "jeopardy to offenses charged by a group of his fellow citizens," and to avoid his conviction "on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell v. United States*, 369 U.S. 749, 770, 771 (1962) (quoting *Stirone v. United States*, 361 U.S. 212, 218 (1960)) (internal quotation marks omitted). To ensure that the grand jury found probable case, an indictment must contain every element of the offense charged. *See id.* at 763. An indictment that fails to do so must be dismissed. *See, e.g.*, *United States v. Pickett*, 353 F.3d 62 (D.C. Cir. 2004) (reversing conviction and dismissing indictment that failed to allege element of the offense).

The Notice Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation."

---

[1] In the prior criminal case, the United States District Court for the Central District of California denied a similar motion to dismiss. *See* No. 21-cr-491, ECF No. 59 (C.D. Cal. Dec. 29, 2021). The law-of-the-case doctrine does not apply to that ruling because this is a different case. *See, e.g.*, *United States v. Burroughs*, 810 F.3d 833, 838 (D.C. Cir. 2016) (denying defendant's reliance on law-of-the-case as to issues decided in separate action based on separate indictment); *Daramy v. Atty. Gen. of the U.S.*, 365 F. App'x 351, 354-55 (3d Cir. 2010) (finding law-of-the-case "inapposite" because prior immigration removal proceeding initiated with a separate notice to appear was a separate action). The prior case was not transferred; it was dismissed, *see* No. 21-cr-491, ECF No. 248 (C.D. Cal. May 11, 2024), and a different United States Attorney's Office filed a separate indictment here. As set forth above, controlling law in this Circuit requires dismissal, so law of the case could not apply to the prior ruling in any event. *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 740 (D.C. Cir. 1995); *UAW v. Donovan*, 756 F.2d 162, 165 n.17 (D.C. Cir. 1985) ("We have reexamined 'the law of the case' 'in light of changes in governing law, newly discovered evidence, or the manifest erroneousness of a prior ruling.'") (internal citation omitted).

U.S. Const. amend. VI.  For that reason, an indictment "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Russell*, 369 U.S. at 765 (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)) (internal quotation marks omitted).  In *Russell*, the Court held that an indictment provided insufficient notice because it lacked factual allegations regarding what the Court viewed as "the very core of criminality" under the statute at issue.  *Id.* at 764.

In addition to ensuring compliance with the Fifth Amendment's guarantee that the grand jury consider and find each element of the offense, and the Sixth Amendment's guarantee that a defendant be informed of the government's accusations against him, these requirements also "enable the court to decide whether the facts alleged are sufficient in law to withstand a motion to dismiss the indictment."  *Id.* at 768 n.15.  *See also United States v. Guertin*, 581 F. Supp. 3d 90, 92 (D.D.C. 2022) (dismissing indictment "[b]ecause the facts alleged in the Indictment cannot support a conviction under either [charged] provision").

The Due Process Clause provides that no person shall "be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "[F]undamental principles of due process . . . mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited."  *Dunn v. United States*, 442 U.S. 100, 112 (1979).  Conduct cannot be punished criminally without "fair warning . . . in language that the common world will understand, of what the law intends to do if a certain line is passed."  *McBoyle v. United States*, 283 U.S. 25, 27 (1931).  Accordingly, "courts must decline to impose punishment for actions that are not plainly and unmistakably proscribed."  *Dunn*, 442 U.S. at 112-13 (quotation omitted).

Here, the law imposed no duty to disclose, much less one that was plain and unmistakable.

3

**ARGUMENT**

I. **To State An Offense, Count 1 Of The Indictment Must Allege A Legally-Cognizable Duty To Disclose.**

Title 18 U.S.C § 1001(a)(1) makes it unlawful in "any matter within the jurisdiction of the executive" branch to "knowingly and willfully" "falsif[y], conceal[], or cover[] up by any trick, scheme, or device a material fact." A legally-cognizable duty to disclose is an essential element of this offense. *See Safavian*, 528 F.3d at 964 ("[T]here must be a legal duty to disclose in order for there to be a concealment offense in violation of § 1001(a)(1) . . . ."); *United States v. Saffarinia*, 424 F. Supp 3d 46, 58 (D.D.C. 2020) ("A violation under Section 1001(a)(1) predicated on concealment has five elements: (1) the defendant had a duty to disclose the material information imposed by statute, regulation, or government form . . . .").

The underlying source for the legal duty to disclose must establish "***specific requirements*** for disclosure of ***specific information***." *Safavian*, 528 F.3d at 964 (emphasis supplied). "There is good reason for demanding such specificity: to comply with Fifth Amendment due process, the defendant must have 'fair notice . . . of what conduct is forbidden . . . .'" *Id.*; *see also United States v. Harra*, 985 F.3d 196, 213 (3d Cir. 2021) ("Thus, a conviction for concealing material facts in violation of 18 U.S.C. § 1001(a)(1)—another subsection of the statute under which Defendants were convicted for making false statements—cannot stand absent fair notice of the legal duty to make the particular disclosure.").

II. **Count 1 Fails To Allege A Legally-Cognizable Duty To Disclose.**

Count 1 fails to state an offense because: (a) it fails to allege a legal duty to disclose to federal investigators; (b) there is no legal duty to disclose to federal investigators, and imposing one here would violate due process; and (c) there is no legal duty to amend prior reports to the FEC, and imposing one here would violate due process.

### A. Count 1 Does Not Allege a Duty to Disclose to Federal Investigators.

Count 1 alleges that Congressman Fortenberry concealed information from federal criminal investigators during interviews on March 23, 2019 and July 18, 2019. *See* Indict. ¶ 21.a-b. It does not, however, allege a legal duty to disclose specific information about campaign contributions to criminal investigators from DOJ or IRS. That failure is fatal. *See, e.g.*, *Safavian*, 528 F.3d at 964; *Saffarinia*, 424 F. Supp. 3d at 71 (dismissing concealment charge under § 1001(a)(1) because "[a]part from Mr. Saffarina's payments and loan from Person A, this Court cannot find that the Indictment sufficiently alleges Saffarinia had a legal duty to disclose the nature and extent of his financial relationship with Person A . . . or the other allegedly concealed facts"); *United States v. Singhal*, 876 F. Supp. 2d 82, 95 (D.D.C. 2012) (dismissing concealment charge under § 1001(a)(1) because the indictment failed to "allege that defendants had a legal duty under U.S. or foreign law to disclose the information allegedly concealed in reports Xinhua Finance furnished to the SEC").

### B. There Is No Duty to Disclose to Federal Investigators.

Even if Count 1 had alleged a duty to disclose to federal investigators during investigative interviews, dismissal would be required because there is no such duty as a matter of law. *See Safavian*, 528 F.3d at 965. More than 50 years ago, the Supreme Court held that, under the perjury statute, a witness has no duty to tell the examiner what he or she knows about the subject matter under examination. The witness need only speak the "literal truth." *See Bronston v. United States*, 409 U.S. 352, 360 (1973) (holding that perjury statute does not apply "simply because a wily witness succeeds in derailing the questioner—so long as the witness speaks the literal truth"). "The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Id.*; *see also id.* at 358 ("It is the responsibility of the lawyer to probe; testimonial interrogation, and cross-examination in particular, is a probing, prying, pressing form of inquiry.").

5

*Bronston*'s literal truth doctrine applies in the context of a government interview and charges under § 1001. *See, e.g.*, *Safavian*, 528 F.3d at 967 ("With respect to Counts . . . which charged violations of § 1001(a)(1), literal truth would have been a complete defense.").

In *Safavian*, the government argued that, when the defendant, a General Services Administration ("GSA") official, was interviewed by an agent of the GSA Office of Inspector General about whether a lobbyist had business before the GSA and had paid for defendant's trip, defendant had a duty to disclose based on "the principle that once one begins speaking when seeking government action or in response to questioning, one must disclose all relevant facts." *Safavian*, 528 F.3d at 965. The D.C. Circuit rejected this argument. *See id.* First, the government cited no statute, regulation, or form imposing such a duty. *Id.* Second, there is no duty to disclose to federal investigative agents; it is the interrogating agent's duty to ask the right questions:

> Attorneys commonly advise their clients to answer questions truthfully but not to volunteer information. Are we to suppose that once the client starts answering a government agent's questions, in a deposition or during an investigation, the client must disregard his attorney's advice or risk prosecution under § 1001(a)(1)? The government essentially asks us to hold that once an individual starts talking, he cannot stop. We do not think § 1001 demands that individuals choose between saying everything and saying nothing. No case stands for that proposition. We therefore conclude that Safavian had no legal duty to disclose and that his concealment convictions cannot stand.

*Id.* Imposing a duty to disclose in a criminal case where existing law does not clearly impose one would violate due process. *See, e.g.*, *Singhal*, 876 F. Supp. 2d at 96 (dismissing concealment charge under § 1001(a)(1) when indictment failed to allege a legally-cognizable duty to disclose and stating that "the Indictment does not give defendants fair notice of the basis of the false statement charges against them, in violation of the Fifth Amendment").

6

### C. A Candidate Has No Duty to Amend Prior FEC Filings.

Although Count 1 does not allege a duty to disclose to the federal criminal investigators, it does allege that federal candidates who learn that prior FEC reports were inaccurate, are "required to cause their campaign to file amended FEC reports with accurate information." Indict. ¶ 9 (incorporated by reference in Count 1 by ¶ 18); *see also id.* ¶ 21(c) (alleging that Congressman Fortenberry did not "cause his campaign to file amended FEC reports with accurate information about the 2016 Fundraiser, including the true contributors and the amounts of their contributions"). This allegation is constitutionally-defective.

*First*, the Indictment does not identify a statute or regulation imposing this purported reporting duty. *See, e.g.*, *Singhal*, 876 F. Supp. 2d at 96 ("[T]he government's references to an 'obligation,' without more, does not suffice to allege a specific legal duty as required under D.C. Circuit law." (citing *Safavian*, 528 F.3d at 964)). Count 1 should be dismissed on this basis alone.

*Second*, a candidate has no FEC reporting duty under any statute or regulation as a matter of law.[2] In FECA, Congress placed the reporting duty on the campaign and its treasurer, not the candidate. A candidate has no reporting duty at all, much less a duty to amend prior reports. FECA and its implementing regulations distinguish the candidate from the "principal campaign committee," which is authorized to receive contributions in support of a candidate. 52 U.S.C. § 30101(2), (4)-(5); 11 C.F.R. §§ 100.3, 100.5. Within the committee, responsibility for reporting and recordkeeping is assigned by statute to the committee's treasurer. A committee cannot accept any contributions without a treasurer. § 30102(a); 11 C.F.R. § 102.7. The treasurer must "file

---

[2] Only the relevant statutes and their implementing regulations can form the basis of a viable duty. The FEC's interpretation of its own authority—including in any agency guidance or publications—is not a relevant consideration. *See Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2265-66 (2024).

7

reports of receipts and disbursements" and "sign each such report."  § 30104(a)(1); 11 C.F.R. § 104.1.  The treasurer must keep records of "all contributions received by or on behalf of" the committee.  § 30102(c)-(d); 11 C.F.R. § 102.9.

There are no similar obligations placed on the candidate.  The candidate is required only to "designate in writing" his authorized committee.  § 30102(e)(1); 11 C.F.R. §§ 101.1, 102.12, 102.13.  And the candidate otherwise acts as an agent of the committee only when he "receives a contribution, or any loan for use in connection with the campaign" or "makes a disbursement in connection with such campaign."  § 30102(e)(2); 11 C.F.R. § 101.2.

Under FECA, Congress thus decided to "impose reporting obligations on political committees and treasurers."  *FEC v. Gus Savage for Congress '82 Committee*, 606 F. Supp. 541, 545 (N.D. Ill. 1985).  There is no similar obligation on a candidate.  In response to judicial questions about the "question of candidate liability under the reporting requirements of the Act," the FEC itself has argued that "it was Congress' determination, right or wrong, that the treasurer of a political committee is liable for the reporting requirement."  *Id.* at 547.

The absence of any reporting duty on candidates is confirmed by the fact that Congress amended FECA to eliminate prior reporting obligations imposed on candidates.  When Congress first enacted FECA in 1971, it imposed reporting requirements on both candidates and their committees:

> REPORTS BY POLITICAL COMMITTEE AND CANDIDATES
> Sec. 304(a).  Each treasurer of a political committee supporting a candidate or candidates for election to Federal office, ***and each candidate for election to such office***, shall file with the appropriate supervisory officer reports of receipts and expenditures on forms to be prescribed or approved by him.
> . . .
> FORMAL REQUIREMENTS RESPECTING REPORTS AND STATEMENTS
> Sec. 306(a).  A report or statement required by this title to be filed by a treasurer of a political committee, ***a candidate***, or by any other person, shall be certified by the

> oath or affirmation of the person filing such report or statemen, taken before any officer authorized to administer oaths.

Pub. L. No. 92-225, tit. III §§ 304, 306, 86 Stat. 3, 14-16 (Feb. 7, 1972) (emphasis supplied).  In 1980, Congress removed candidates' then-existing reporting obligations in favor of reporting through the treasurer of each campaign committee.  Pub. L. No. 96-187, tit. I § 304, 93 Stat. 1339 (Jan. 8, 1980); *see also* H.R. Rep. 96-422 (Sept. 7, 1979) ("Under the bill, all of the financial activities of a campaign will be controlled and reported by the candidate's authorized committees.").  Candidates no longer have a reporting duty.

*Third*, the campaign itself has no duty to amend prior FEC reports under the circumstances alleged in the Indictment.  FECA's implementing regulations require campaigns to file amended reports only to provide "contributor information" that was missing at the time of the initial report but is "received after the contribution has been disclosed."  11 C.F.R. § 104.7(b)(4)(i).  The Indictment does not allege that the prior FEC reports were missing contributor information.  To the contrary, the Indictment alleges that the information in the prior FEC reports was "false or inaccurate."  Indict. ¶ 9.  Furthermore, the regulations state that the campaign is "not required to file amendments to reports covering previous election cycles."  11 C.F.R. § 104.7(b)(4)(ii).  The Indictment alleges a purported duty to amend arising only in 2018 with respect to donations made in support of the 2016 election.  *See* Indict. ¶ 1 (alleging campaign finance investigation regarding Congressman's 2016 congressional campaign); *id.* ¶¶ 15-16 (alleging that Congressman was told on June 4, 2018 about "illegal contributions" made in 2016); *id.* ¶ 19 (alleging a concealment scheme starting "on or about June 4, 2018").  Because the information purportedly received in 2018 related to a prior election cycle, there was no duty to amend as a matter of law.

9

Because no statute or regulation imposes a duty on candidates to amend prior FEC filings, Count 1 must be dismissed. Imposing such a duty in a criminal case where existing law does not clearly impose one would violate due process. *See, e.g.*, *Singhal*, 876 F. Supp. 2d 95.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Count 1 of the Indictment.

Date: October 29, 2024

Respectfully submitted,

/s/ *Tobin J. Romero*
Tobin J. Romero (Bar. No. 461273)
Jonathan B. Pitt (Bar No. 479765)
Andrew P. Lemens (Bar No. 156487)
Kristen A. DeWilde (Bar No. 90012738, *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave SW
Washington, DC 20024
Tel: (202) 434-5000
F: (202) 434-5029
tromero@wc.com
jpitt@wc.com
alemens@wc.com
kdewilde@wc.com

*Counsel for Jeffrey Fortenberry*