UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 1:24-cr-221 (TNM) |
| JEFFREY FORTENBERRY, | |
| *Defendant.* | |

**UNITED STATES' MOTION *IN LIMINE* NO. 1
TO PRECLUDE IMPROPER ARGUMENT REGARDING MATERIALITY**

The United States of America, by and through the undersigned attorneys, respectfully moves *in limine* to preclude improper arguments that misstate the law of materiality as it relates to the charged offenses. Specifically, the government seeks to preclude the defense from improperly arguing or suggesting to the jury that, in the context of 18 U.S.C. § 1001, materiality: (1) requires the Defendant's statements to have actually affected a federal agency's decisions or activities; (2) is defeated if the agency "already knew" the statements were false at the time they were made; and/or (3) requires there to be a discrete, pending decision to be determined by the agency. Such arguments and references would significantly and unduly prejudice the Government by improperly distorting and elevating the definition of materiality beyond what the law requires and would confuse and mislead the jury. The defense opposes the motion.

I.   **Factual Background**

　　a.　*The Federal Investigation and Current Charges*

The Defendant, Jeffrey Fortenberry, is charged with a scheme to falsify and conceal material facts, in violation of 18 U.S.C. § 1001(a)(1) (Count One), and making materially false statements, in violation of 18 U.S.C. § 1001(a)(2) (Count Two). The issues at trial are whether

1

Fortenberry willfully falsified, concealed, or covered up material facts by a scheme, and whether he made materially false statements to federal investigators.

The Indictment alleges that Fortenberry's unlawful actions were meant to hide his receipt and knowledge of illicit conduit and foreign contributions that were funneled to his campaign at a 2016 political fundraiser in Los Angeles, California. ECF No. 1 ["Indictment"] ¶¶ 19-22.

Since 2015, federal agents with the Federal Bureau of Investigation (FBI) and Internal Revenue Service (IRS) had been investigating foreign national Gilbert Chagoury, a Nigerian-born billionaire of Lebanese descent, for potential violations of, among other things, the Federal Election Campaign Act (FECA) and the Foreign Agents Registration Act (FARA). As part of that investigation, the federal government investigated: multiple unlawful schemes and transactions to funnel foreign money to high-level U.S. government officials; the involvement of other private associates of Chagoury who helped effectuate the schemes; the potentially corrupt relationships between Chagoury and the recipient public officials; and several concealment schemes by which the public officials sought to hide their receipt of the illicit contributions or their knowledge of the same. (*See* Indictment ¶¶ 1, 13.)

In one of those schemes, Chagoury, with the aid of a United States citizen named Toufic Baaklini and associate "Individual H," funneled $30,000 cash to Fortenberry at the 2016 Fundraiser in Los Angeles, during which people recruited by Individual H acted as conduits to contribute Chagoury's money to Fortenberry's campaign. (*Id.*)

In September 2016, Individual H began cooperating with the federal investigation. (*Id.* ¶ 14.) In March and April 2018, Fortenberry reached out to Individual H to ask him to host another fundraiser. (*Id.* ¶ 15.) In a follow-up call on June 4, 2018, which was surreptitiously recorded at the FBI's direction, Individual H and Fortenberry discussed the request for another fundraiser.

2

During that conversation, Individual H repeatedly told Fortenberry that Baaklini had given $30,000 in cash to contribute to Fortenberry's campaign at the prior 2016 fundraiser, that the money was distributed by other individuals, and that the $30,000 in cash "probably did come from Gilbert Chagoury." (*Id.* ¶ 16.) Fortenberry told Individual H that there was "no problem" and continued to press for the second fundraiser.

In March 2019, federal investigators approached Fortenberry at his residence in Lincoln, Nebraska. (*Id.* ¶ 21.a.) During the ensuing voluntary interview, Fortenberry denied knowledge of any conduit or foreign contributions to his campaign during the 2016 fundraiser. (*Id.*) At Fortenberry's request, he again participated in a voluntary interview in Washington, D.C. in July 2019. (*Id.* ¶¶ 21.b, 22.) In that interview, with his counsel present, Fortenberry again denied knowledge of any conduit or foreign contributions to his campaign during the 2016 fundraiser. (*Id.*)

    b.  *The Prior Proceeding*

Fortenberry was previously charged and tried in the Central District of California. *See generally United States v. Fortenberry*, Case No. 21-cr-491 (SB) (C.D. Cal.).[1] In March 2022, following a seven-day trial, a jury convicted him on all counts. On appeal, the Ninth Circuit reversed the convictions without prejudice for lack of venue. *United States v. Fortenberry*, 89 F.4th 702 (9th Cir. 2023).

Before the prior trial, the government filed a motion *in limine* to preclude Fortenberry from making improper arguments pertaining to materiality, including to preclude the defense from

---

[1] Fortenberry was charged with three offenses in the prior proceeding. In addition to the two violations alleged here in the District of Columbia, in the prior proceeding Fortenberry was charged with an additional false statement offense specifically stemming from statements he made to federal investigators during the 2018 interview at his home in Nebraska.

arguing or introducing a slew of irrelevant, improper, and prejudicial evidence. Case No. 21-cr-491 (SB) (Dkt. No. 95.) The district court granted the motion in part, concluding that it would be "clearly improper" for the defense to argue to the jury that materiality requires an actual effect on the federal agency.[2] (Dkt. No. 152 at 1-2.)

## II. Argument

To establish violations of sections 1001(a)(1) or 1001(a)(2), the government must show (among other things) that the defendant knowingly and willfully made a *materially* false statement or concealed *material* facts. *United States v. Moore*, 612 F.3d 698, 700-01 (D.C. Cir. 2010); *United States v. Saffarinia*, 424 F. Supp. 3d 46, 58 (D.D.C. 2020).

The Supreme Court and D.C. Circuit have repeatedly and consistently explained that the test for materiality is whether the statement "has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed." *Kungys v. United States*, 485 U.S. 759, 770 (1988); *Moore*, 612 F.3d at 701. From that well-established test, some common principles have emerged.

*First,* materiality is an objective test, evaluated based on the intrinsic capabilities of the false statement itself, such that the jury can infer from the false statement if it was "was capable of affecting the agency's functions." *United States v. Verrusio*, 762 F.3d 1, 20–21 (D.C. Cir. 2014) (citation omitted); *see also United States v. Williams*, 865 F.3d 1302, 1310–11 (10th Cir. 2017) ("[T]he objective materiality test focuses on 'the intrinsic capabilities of the statement itself, rather than the possibility of the actual attainment of its end as measured by collateral circumstances.'" (quoting *United States v. McBane*, 433 F.3d 344, 351 (3d Cir. 2005)); *United States v. Peterson*,

---

[2] As the defense has noted, the district court's decisions in the prior proceeding do not fall within the "law of the case" doctrine. *See* Dkt. No. 24 at 2 n.1; *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996). However, the Court may continue to find the decisions and reasoning in the prior proceeding persuasive. *Nw. Forest Res. Council v. Dombeck*, 107 F.3d 897, 900 (D.C. Cir. 1997).

4

538 F.3d 1064, 1072 (9th Cir. 2008) (similar); *Blake v. United States*, 323 F.2d 245, 247 (8th Cir. 1963) (similar).  For that reason, the jury can find materiality even in the absence of any testimony as "to how, if at all, the information disclosed in the [false] statements could have influenced the action of the [agency]." *Verrusio*, 762 F.3d at 20–21.

*Second*, materiality is satisfied if the false statement related to the subject of the investigation or was relevant to the investigator's task.  *See, e.g.*, *Brogan v. United States*, 522 U.S. 398, 402 (1998); *see also United States v. Flynn*, 507 F. Supp. 3d 116, 132 (D.D.C. 2020) (rejecting the argument that materiality requires more than "mere relevance" or that there be a reasonable likelihood of influence and explaining "that is not the law").  Section 1001 reflects "the congressional intent to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described." *Brogan*, 522 U.S. at 403 (citation omitted).  And because "the investigation of wrongdoing is a proper governmental function"—which purpose is to uncover the truth—"any falsehood *relating to the subject of the investigation* perverts that function," regardless of the "credulousness of the federal investigator (or the persuasiveness of the liar)[.]"  *Id.* (emphasis added); *see also United States v. Whitaker*, 848 F.2d 914, 916 (8th Cir. 1988) ("The issue is whether the statements, viewed alone, were capable of influencing the function of the [federal agency]." (citations omitted)).

*Third*, given Congress's intent to broadly protect the functioning of government agencies from falsehoods, section 1001 encompasses not only statements that "might influence a discrete decision" but also statements that "might affect in any way the functioning of the government agency to which it was addressed." *Moore*, 612 F.3d at 701 (collecting cases).  Thus, a statement is material if it is capable of influencing "either a discrete decision or any other function of the agency to which it was addressed." *Id.* at 701-02 ("Moore's false statement was capable of

affecting the Postal Service's *general function* of tracking packages and identifying the recipients of packages entrusted to it." (emphasis added)). For that matter, materiality does not turn on whether an investigation is even pending or not, as a lie that "influence[s] the possibility that an investigation might commence" is as harmful as one that "distort[s] an investigation already in progress." *Flynn*, 507 F. Supp. 3d at 132 (quoting *United States v. Hansen*, 772 F.2d 940, 949-50 (D.C. Cir. 1985)).

*Fourth*, to prove materiality, the government need not show that the defendant's statement (or concealment of a fact) had any actual influence or effect on the agency. *Verrusio*, 762 F.3d at 20 ("A statement need not actually influence an agency in order to be material." (cleaned up and citing *Moore*, 612 F.3d at 700)); *United States v. Diggs*, 613 F.2d 988, 999 (D.C. Cir. 1979) ("Proof of actual reliance on the statement is not required[.]"); *see also Brogan*, 522 U.S. at 402-03 (rejecting the defendant's attempt to "elevate" standard so that "§ 1001 does not apply where a perversion of governmental functions does not exist."); *United States v. Herring*, 916 F.2d 1543, 1547 (11th Cir. 1990) ("Materiality is satisfied even if the federal government was not actually influenced by the false statements."). Nor is there any requirement to show that actual influence was literally possible. *United States v. Safavian*, 649 F.3d 688, 691–92 (D.C. Cir. 2011) (reaffirming *Moore* and rejecting argument that statement could not be material because "the agent who interviewed Safavian knew, based upon his knowledge of the case file, that the incriminating statements were false when Safavian uttered them"); *United States v. Burke*, 425 F.3d 400, 409 (7th Cir. 2005) ("That the prosecutors knew (or thought they knew) the answers to the questions they asked Burke does not make the information less material."); *United States v. Goldfine*, 538 F.2d 815, 820 (9th Cir. 1976) ("[T]he conduct Congress intended to prevent by § 1001 was the willful submission to federal agencies of false statements calculated to induce agency reliance or

action, irrespective of whether actual favorable agency action was, for other reasons, impossible." (citation omitted)).

The Seventh Circuit put it well:

> We do not require the statement to *actually* influence the agency to which it was directed, or even that the agency rely on the statement in any way. Instead, we have recognized, like many of our sister circuits, that a frequent aim of false statements made to federal investigators is to cast suspicion away from the declarant, which in the ordinary course would have an intrinsic capability to influence an FBI investigation. When statements are aimed at misdirecting agents and their investigation, even if they miss spectacularly or stand absolutely no chance of succeeding, they satisfy the materiality requirement of 18 U.S.C. § 1001.

*United States v. Lupton*, 620 F.3d 790, 806-07 (7th Cir. 2010) (emphasis in original) (citations omitted).

Any attempt by the defense to argue a contrary, elevated standard of materiality to the jury would be wholly improper. The defense should not be permitted to argue or suggest to the jury that materiality (1) requires Fortenberry's statements to have actually affected the FBI/IRS's decisions or activities; (2) is defeated if the FBI/IRS "already knew" the truth at the time of Fortenberry's statements, such that actual influence or effect was impossible; and/or (3) requires there to be a discrete, pending decision by the agency.[3]

As the foregoing cases make clear, such arguments are squarely at odds with the law defining materiality as an objective standard by which the jury looks at the intrinsic capabilities of the false statement and not to any actual effect or literal possibility of effect or influence. Any attempt by the defense to argue otherwise also contravenes the cases explaining that section 1001

---

[3] On this last point, Fortenberry's motion to dismiss the indictment (Dkt. No. 23) incorrectly espouses the proposition that materiality requires "the decision the agency was trying to make." (*Id.* at 2-3.) But as the government will more fully explain in its opposition that motion, *Brogan*, *Moore*, and *Flynn* make clear, section 1001 broadly protects the general functioning of the federal agency, even in the absence of a discrete decision to be made.

7

covers false statements relating to the subject of the investigation, so as to broadly protect the authorized functions of the federal agency, even in the absence of a pending, discrete decision to be made.

### III.   Conclusion

For the foregoing reasons, the government respectfully requests that the Court preclude the defense from making any improper arguments or references to the jury that misstate the law of materiality, including that materiality: (1) requires Fortenberry's statements to have actually affected the agency's decisions or activities; (2) is defeated if the agency "already knew" the truth behind his false statements; and/or (3) requires there to be a discrete, pending decision by the agency.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:   /s/ Susan Har
SUSAN HAR (Cal. Bar No. 301924)
Special Assistant United States Attorney
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
(213) 894-3289
susan.har@usdoj.gov

TIMOTHY VISSER (DC Bar No. 1028375)
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2590
timothy.visser@usdoj.gov