**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal No. 1:24-cr-221 (TNM)** |
| **JEFFREY FORTENBERRY,** | |
| *Defendant.* | |

## GOVERNMENT'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE IRRELEVANT, IMPROPER, AND INFLAMMATORY EVIDENCE AND ARGUMENT

The United States of America, by and through the undersigned attorneys, respectfully moves the Court to exclude irrelevant, improper, and inflammatory evidence and argument.  This is a straightforward case about the Defendant's repeated (and recorded) lies to federal investigators about illegal political contributions received by his campaign and his knowledge of those donations.  This case is *not* about the slew of irrelevant, improper, and unduly prejudicial topics that the defense may seek to use to distract jurors and urge them to render a verdict on inappropriate emotional grounds.  As explained below, this matter has been inundated with baseless allegations of Government misconduct and political persecution.  Through the guise of character evidence, the defense has also sought to improperly appeal to fact-finders' sympathies by gratuitously focusing on the defendant's personal history instead of the facts and issues relevant to determining his guilt or innocence.  Because all such evidence is irrelevant, improper, inflammatory, and primarily geared towards nullification, it should be excluded.

### I.    RELEVANT BACKGROUND

#### a.  Procedural History

The Defendant, Jeffrey Fortenberry, is awaiting trial on a two-count Indictment through which a grand jury charged him with: falsifying and concealing material facts, in violation of 18

U.S.C. § 1001(a)(1); and making false statements, in violation of 18 U.S.C. § 1001(a)(2). The charges stem from allegations that Fortenberry lied to federal investigators in order to conceal his receipt and knowledge of improper foreign and conduit contributions that were funneled to his campaign at a 2016 fundraiser in Los Angeles, California.

Fortenberry was previously tried and convicted in the Central District of California on charges covering the same conduct. *See generally United States v. Fortenberry*, Case No. 2:21-cr-491 (SB) (C.D. Cal.) (hereinafter the "CDCA Proceeding"). In late-December 2023, the Ninth Circuit reversed the conviction after finding that venue was lacking in the Central District of California. *See United States v. Fortenberry*, 89 F.4th 702 (9th Cir. 2023).

The Ninth Circuit's venue-based reversal did not otherwise call into question or impugn the facts underlying the jury's verdicts that Fortenberry's guilt was proven beyond a reasonable doubt. While reversing the California conviction, the Ninth Circuit made clear that its decision was made "without prejudice to retrial in a proper venue." *Id.* at 704.

**b. Fortenberry's Reliance on Irrelevant and Inflammatory Evidence and Argument**

Broadly speaking, the jury's task in this trial will be to assess whether (as the jury in the CDCA Proceeding found) the Government has proven beyond a reasonable doubt that Fortenberry

knowingly and willfully concealed material information and made a material false statement concerning a matter within the jurisdiction of the United States' Executive Branch.[1]

As is his right, Fortenberry has claimed innocence throughout these proceedings. But his primary method of doing so has been through baseless and inflammatory accusations of Government misconduct and political persecution, accompanied with suggestions that Fortenberry's past public service, religious observance, and familial status should excuse any potential crime he committed.

Fortenberry and those close to him have carried out these attacks in the public since the day he was indicted in California. *See, e.g.*, *Federal Indictment Accuses Nebraska Congressman of Lying to FBI*, PBS News (Oct. 19, 2021) https://www.pbs.org/newshour/politics/federal-indictment-accuses-nebraska-congressman-of-lying-to-the-fbi (reporting that in an email to supporters in anticipation of the charges in California, Fortenberry's wife wrote that the prosecution "has all the marks of being a political attack, manufactured to take him out," and that the U.S. Attorney involved is "in the running for a big promotion, and don't forget the mid-term elections right around the corner for control of the House."). The defense sought to bring the incendiary and improper public attacks before the jury during the CDCA Proceeding. *See, e.g.*, CDCA Proceeding, ECF No. 97 at 8 (motion *in limine* response explaining the defense's intent to

---

[1] *See, e.g.*, *United States v. Saffarinia*, 424 F. Supp. 3d 46, 58 (D.D.C. 2020) ("A violation under Section 1001(a)(1) predicated on concealment has five elements: (1) the defendant had a duty to disclose the material information imposed by statute, regulation, or government form; (2) the defendant concealed or covered up the facts using a trick, scheme, or device; (3) the concealed facts were material; (4) the defendant concealed those facts knowingly and willfully; and (5) the concealed information concerned a matter within the jurisdiction of the Executive Branch.") (citations omitted), *aff'd* 101 F.4th 933 (D.C. Cir. 2024). *See also United States v. Moore*, 612 F.3d 698, 700-01 (D.C. Cir. 2010) (To establish a "violation of 18 U.S.C. § 1001(a)(2), the Government must show [the defendant] (1) 'knowingly and willfully' (2) '[made] any materially false, fictitious, or fraudulent statement or representation' (3) in a 'matter within the jurisdiction of the executive ... branch of the Government of the United States.'") (internal citations omitted).

argue to the jury that "the personal bias and political affiliation of the prosecutors … explain why Congressman Fortenberry was set up by the government").

While represented by different attorneys in this District, Fortenberry has wasted no time carrying out similar attacks in the press and before this Court.  *See In a Revived Case, a Former Congressman is Charged with Lying About an Illegal Campaign Contribution*, Associated Press (May 9, 2024), https://apnews.com/article/jeff-fortenberry-nebraska-campaign-contribution-congress-5b6386dc84bec3e5ae6ef67a990d18cf (quoting Fortenberry's spokesperson as saying that retrying the matter in the District of Columbia "just highlights the prosecutors' vindictive obsession with destroying a good man's life."); s*ee also* ECF No. 25 at 1 (Defense motion baselessly claiming that "Congressman Fortenberry—a member of the Republican Party, faithful Catholic, social conservative, and public sponsor of conservative positions, who consistently voted for positions advocated by President Trump—has been singled out by the government.").[2]

As explained in further detail below, Fortenberry's past attempts to distract jurors through appeals to sympathy instead of admissible facts have not been limited to attacks on the Government.  The defense has also used the guise of character evidence to introduce improper evidence and argument relating to Fortenberry's past public service, family ties and responsibilities, religious piety, purported lack of material wealth, and similar topics.

Through this motion, the Government seeks to keep this case focused on the law and relevant evidence by asking the Court to prevent Fortenberry from introducing legally irrelevant and improper evidence and using inflammatory rhetoric and argument before the jury.  Any contrary approach would allow the defense to lawlessly invite the jury to render a verdict on impermissible emotional grounds.

---

[2] Pursuant to the Court's Scheduling Order, the Government will separately respond to Fortenberry's motions to dismiss and motion to compel on or before December 3, 2024.

## II.    RELEVANT GENERAL LEGAL PRINCIPLES

Evidence is relevant if: (1) it has any tendency to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence in determining the action.  Fed. R. Evid. 401.  Irrelevant evidence is not admissible.  Fed. R. Evid. 402.  The Federal Rules of Evidence direct trial judges that they must, "to the extent practicable[,] conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means."  Fed. R. Evid. 103(d).  This mandate is part and parcel of a trial judge's "responsibility to maintain decorum in keeping with the nature of the proceeding; 'the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct.'"  *United States v. Young*, 470 U.S. 1, 10 (1985) (quoting *Quercia v. United States*, 289 U.S. 466, 469 (1933)).

Trial courts have an obligation to guard against the presentation of irrelevant evidence or arguments geared towards nullification.  *See United States v. Gorham*, 523 F.2d 1088, 1097-98 (D.C. Cir. 1975) (affirming exclusion of evidence relevant only to jury nullification) (citing *Sparf v. United States*, 156 U.S. 51, 106 (1895)).  Allowing nullification evidence and argument is particularly dangerous because it increases the likelihood that "juries would 'become a law unto themselves,' such that 'our government [would] cease to be a government of laws, and [would] become a government of men.'"  *See United States v. Wilkerson*, 966 F.3d 828, 834-35 (D.C. Cir. 2020) (citing *Sparf*, 156 U.S. at 102).

Courts must also ensure that irrelevant, improper, and inflammatory evidence not be admitted through the guise of character or "other act" evidence.  Federal Rule of Evidence 404(a)(1) generally prohibits the use of a "person's character or character trait" to "prove that on a particular occasion the person acted in accordance with the character or trait."  The limited exception is where a defendant's trait of character is pertinent to the charges in a criminal case.

Specifically, the Rule states that a criminal defendant "may offer evidence of the defendant's *pertinent* trait." Fed. R. Evid. 404(a)(2)(A) (emphasis added). Even then, such evidence: (i) may only be proved by reputation or opinion testimony, Fed. R. Evid. 405(a); and (ii) may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, Fed. R. Evid. 403. *United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007) (internal citations omitted).

Even where a trait of character is pertinent, Rule 405(a) limits the manner and method of proving that trait. On direct, such evidence must be in the form of "testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a); *see also United States v. Washington*, 106 F.3d 983, 999 (D.C. Cir. 1997). Evidence of specific instances, or good acts evidence, is generally prohibited.[3] *Id.*

The only limited exception is where a defendant's trait of character is an "essential element of a charge, claim, or defense." Fed. R. Evid. 405(b). The Advisory Committee Notes to Rule 405 explain that such evidence "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time," and "[c]onsequently the rule confines the use of evidence of this kind to cases in which character is, in the strict sense, in issue and hence deserving of a searching inquiry." As that note suggests, improperly allowing character evidence in the form of specific acts presents very real nullification-type risks to the trial process. This is one of the reasons for why a defendant's character trait will rarely ever be an "essential element." *See* 1 McCormick on Evid. § 187 (8th ed.) (collecting cases); Mueller & Kirkpatrick, 2 Federal Evidence § 4.44 (4th ed.

---

[3] On cross-examination, however, the government may be permitted to inquire into specific instances of defendant's conduct to challenge a character witness's testimony regarding defendant's reputation or opinion for a pertinent character trait. Fed. R. Evid. 405(a).

2013) ("Almost never is character an 'element' of a charge or defense in criminal cases."); Wright

& Miller, Federal Practice and Procedure, 22B Fed. Prac. & Proc. Evid. § 5267 (2d. ed. 2018).

In addition to a trial court's mandate to exclude irrelevant character evidence or pertinent

character evidence in an improper form, and its obligation to guard against nullification, "[t]he

court may exclude relevant evidence if its probative value is substantially outweighed by a danger

of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue

delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.   The

"unfair prejudice" prong of Rule 403 often reflects the risk that evidence is offered simply to create

sympathy or outrage on the part of the jury or to encourage them to render a decision based on

something other than the facts and the law.  *See Old Chief v. United States*, 519 U.S. 172, 180

(1997) (unfair prejudice "means an undue tendency to suggest decision on an improper basis,

commonly, though not necessarily, an emotional one." (citing Advisory Committee's Notes to

Rule 403)).

### III.   THE COURT SHOULD PREVENT THE DEFENSE FROM PRESENTING IRRELEVANT, IMPROPER, AND INFLAMMATORY EVIDENCE AND ARGUMENT

#### a.   The Court should preclude the defense from making arguments, presenting evidence, or questioning witnesses about baseless allegations of political motivation or other politically charged irrelevant topics.

In the CDCA Proceeding, Fortenberry sought to introduce baseless assertions that the case

was politically motivated.  Following a Government motion *in limine*, the Court agreed to exclude

any such material.  *See* CDCA Proceeding, ECF No. 97 and 152 at 2-3.[4]  Through its selective

prosecution claim, the defense has demonstrated its intent to seek similar lines of argument in this

forum.  *See generally* ECF No. 25.  The groundless attempts to inject inflammatory political

---

[4] For the Court's convenience, ECF No. 97 from the CDCA Proceeding is attached as Exhibit 1, and ECF No. 152 from the CDCA Proceeding is attached as Exhibit 2.

rhetoric and sentiment into this case should be rejected, and any related evidence or argument should not be presented to the jury.

At best, the politically charged arguments that Fortenberry seeks to make relate to a (meritless) selective prosecution claim. But "the issue of selective prosecution is one to be determined by the court as it relates to an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which [he] was charged." *United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983) (internal citations omitted); *see also United States v. Abboud*, 438 F.3d 554, 579 (6th Cir. 2006) ("[T]he defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury.").

The facts alleged and arguments made by the defense in its selective prosecution filing have no tendency to make a fact of consequence to the jury's determination more or less probable. The same is true for any evidence or argument regarding the alleged political motivations or affiliations of the prosecution or the purported political impact of this case. Under Rules 401 and 402, all that material is inadmissible. *Cf. United States v. Rosado*, 728 F.2d 89, 93 (2d Cir. 1984) (claims by defendants that they were victims of political persecution were "matters far beyond the scope of legitimate issues in a criminal trial.").

Even if there was any conceivable evidentiary relevance to the allegations raised by the defense through its selective prosecution claim, its probative value would be substantially outweighed by the danger of unfair prejudice, most obviously in the form of encouraging the jury to render a verdict on an emotional (but not factual or legal) basis. Such evidence is therefore also inadmissible under Rule 403. *Cf. United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993)

(courts can exercise their discretion to "block defense attorneys' attempts to serenade a jury with the siren song of nullification.")

Fortenberry's counsel has indicated that they do not intend to introduce evidence *solely* to encourage nullification, but that they *may* use such topics to cross-examine Government witnesses about their alleged bias or credibility.  While bias is always a relevant subject for cross-examination, counsel must have a good-faith basis for pursuing any line of cross-examination.  *See United States v. Lin*, 101 F.3d 760, 769 (D.C. Cir. 1996) (internal citations omitted).  It is hard to see how the sorts of baseless allegations raised in the defense's selective prosecution motion could form a good-faith basis to cross-examine any Government witness at trial with claims of politically motivated Government misconduct.  Even putting aside the lack of a good-faith basis to pursue that line of cross-examination, doing so would confuse the jury, mislead them, and result in substantial unfair prejudice.  It should thus be precluded under Rule 403.  At the very least, before attempting any cross-examination on such topics, the defense should be required to raise the issue outside of the jury's presence and identify its good-faith basis for pursuing a particular line of questioning.

> **b. The Court should preclude the defense from making arguments, presenting evidence, or questioning witnesses about the potential punishment in this case or consequences of the prosecution.**

Just as incendiary claims of political persecution are irrelevant to the jury's task in this matter, so too is any "information regarding the consequences of a verdict" in the case.  *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury.").  The defense should thus be precluded from making any arguments, presenting any evidence, or questioning any witnesses about, or in ways that imply, the potential

punishment in this case or consequences to Fortenberry because of this prosecution.  Nor should the defense be allowed to assert or suggest that the prosecution constitutes a waste of law enforcement resources or has damaged Fortenberry's career.  *See, e.g.*, ECF No. 25 at 31 (defense superfluously swiping at "the expenditure of cross-country resources" being used in this matter).  Any such evidence or argument is clearly inadmissible under Rules 401, 402, and 403.

Fortenberry's counsel has indicated that they do not plan to *affirmatively* reference punishment or the consequences of this prosecution to Fortenberry's career, but that Fortenberry may do so in response to potential Government evidence or argument.  The Government certainly does not intend to mention punishment or the other consequences of this prosecution to Fortenberry, and therefore cannot conceive of how the door might be opened to any such evidence or argument.

> **c. The court should preclude the defense from using the guise of character evidence to make arguments, present evidence, or question witnesses about irrelevant or improper aspects of Fortenberry's past public service, family ties and responsibilities, religious piety, purported lack of material wealth, and similar topics.**

Fortenberry's attempts to inappropriately appeal to the jurors' emotions and sympathies will likely not be limited to attacks on the Government.  As evidenced by the CDCA Proceeding, the defense may also seek to use the guise of character evidence to introduce improper evidence and argument relating to Fortenberry's past public service, family ties and responsibilities, religious piety, purported lack of material wealth, and similar topics.  The Court should preclude the defense from doing so.

During the CDCA Proceeding, the defense called multiple witnesses on Fortenberry's behalf. One of those witnesses was Fortenberry's wife, Celeste Fortenberry.[5] Among other things, her direct examination included:

- Testimony that Fortenberry's father "was killed" when Fortenberry "was 12 years old," that Fortenberry's widowed mother raised him "to be a person of honor and integrity and faith," and that Celeste Fortenberry met the former Congressman while "he was pursuing a Master's in theology." Ex. 3 at 22-24.

- Admission of an exhibit showing a picture of the Fortenberry's residence, presumably to show that they did not live in a luxurious home. *Id.*

- Testimony that Fortenberry not only had five daughters, but that he also lived with pet chickens, bees, and "a beagle named Porsche." *Id.*

- Testimony that Fortenberry could not afford to have a separate home in Washington, D.C. and would sleep on the couch in his congressional office. *Id.* at 26.

- Testimony that the Fortenberry family was paying for their "defense in this case." *Id.* at 63.

- Despite being repeatedly instructed not to offer specific details about Fortenberry's daughter's health issues and despite repeatedly sustained objections, a post-objection statement on the record offering specific details of those issues. *Id.* at 44.

- Testimony that in June 2018, she was with her husband in Finland and Estonia because Fortenberry was "dealing with things like Russian aggression toward Ukraine." *Id.* at 34.

- Testimony that in March 2019 she was in Kenya with her husband attending a conference on "sustainability, wildlife conservation, and antipoaching measures." *Id.* at 51.

The defense also called Congresswoman Anna Eshoo as a character witness in the CDCA proceeding.[6] Among other things, Representative Eschoo testified that:

- She met Fortenberry when he physically "crossed the aisle" on the floor of the House of Representatives and she has voted on "some of the most consequential votes" such as a "war resolution," "genocide resolutions," "our nation's budget," funding the

---

[5] Mrs. Fortenberry's testimony from the CDCA Proceeding is attached as Exhibit 3.
[6] Congresswoman Eshoo's testimony from the CDCA Proceeding is attached as Exhibit 4.

courthouse where the trial was taking place, "healthcare," "criminal justice," and "just about everything that one can think of." Ex. 4 at 97-98.

- Her grandparents were religious minorities who fled the Middle East "because they were being slaughtered" and it "was a real boost" that Fortenberry cared so much about and was so interested in [the] issue." *Id*. at 100-01.

- Fortenberry "understood the faith" and "came to the table with considerable knowledge of his own faith." *Id*.

- She and Fortenberry worked on a 2014 resolution "calling for urgent international intervention on behalf of Iraqi civilians facing a dire humanitarian crisis and severe persecution in the Nineveh Plains region of Iraq," and that they also submitted a letter to President Barrack Obama on the topic. *Id*. 102-106.

The defense also called Andrew Braner, Fortenberry's former Chief of Staff, as a witness.[7] Braner testified that Fortenberry was "the last great statesman" and that he "carries himself in a very dignified way and he demands excellence." Ex. 5 at 225. Braner further testified that Fortenberry is "a visionary." *Id*. at 226. Braner's testimony also improperly presented specific acts as a way to demonstrate Fortenberry's general good character. For example, Braner testified that Fortenberry once chastised Braner for using an office stamp to send a personal letter. *Id*. at 261-262. Braner also testified about a specific instance in which Braner was presented with a potential bribe or gratuity and then, after being told of the incident, Fortenberry sought to notify law enforcement. *Id*. at 263-265.

On multiple occasions through multiple witnesses during the CDCA Proceeding, the defense repeatedly sought to admit a 600+ page calendar detailing Fortenberry's body of work as a public official and purported good works for the community.

Nibras Basitkey, who at one point served as the "Director of Minority Outreach" for Fortenberry's campaign, also testified for the defense in the CDCA Proceeding.[8] Basitkey

---

[7] Mr. Braner's testimony from the CDCA Proceeding is attached as Exhibit 5.
[8] Ms. Basitkey's testimony from the CDCA Proceeding is attached as Exhibit 6.

ostensibly was called as a character witness. Despite sustained objections, the defense elicited testimony from Basitkey about her (irrelevant) view that Fortenberry's work protecting religious minorities was sincere. Ex. 6 at 177. She also explained that she grew up in a small Yezidi village in Iraq and that her family fled genocide in 2014. *Id*. at 170-72. Her family arrived in Lincoln, Nebraska as refugees, and she first became aware of Fortenberry when he attended a Yezidi New Year celebration there. *Id*. The defense even sought to have Basitkey explain how good she felt when, while in high school, she wrote a "letter in very broken English" asking to meet with Fortenberry and he responded to it. *Id*. at 172-73.

The Government understands that it is appropriate to orient the jury with a minimal amount of introductory testimony about a witness's connection to a case or defendant. The Government also understands that some information about Fortenberry's congressional work and travels may be relevant to the trial. But as the above makes clear, in the CDCA Proceeding, Fortenberry and his attorneys repeatedly, gratuitously, and cynically went far beyond appropriate evidence. In doing so, the defense tried to present irrelevant and cumulative evidence about Fortenberry's past public service, family ties and responsibilities, religious piety, purported lack of material wealth, and similar topics. Such evidence was, and continues to be, irrelevant, unduly prejudice, and geared towards encouraging nullification. Under Rules 401, 402, and 403, it should be excluded.

During the CDCA Proceeding, the defense sought to introduce much of the inappropriate "good acts" material described above under the guise of character evidence. Fortenberry's counsel in this case have stated that they are not prepared to identify what character evidence they may seek to admit. But the character evidence rules preclude admission of nearly all of the "good acts" evidence that Fortenberry's prior character witnesses testified to during the CDCA Proceeding.

Under Rule 404, the charges in this case permit the defense to present reputation or opinion testimony about Fortenberry's traits for truthfulness and general law-abidingness (within the bounds of Rule 403). *See, e.g.*, *In re Sealed Case*, 352 F.3d 409, 412 (D.C. Cir. 2003). But as the CDCA Proceeding demonstrates, Fortenberry will likely seek to introduce and reference far more than the permissible reputation or opinion testimony regarding character traits of truthfulness and general law-abidingness. Instead, he may seek to offer evidence—both through testimony and exhibits—that he is a "good" person who was a devoted public servant and is a relatable family man. Those traits are not pertinent traits of character within the meaning of Rule 404(a), and the Court should exclude any such evidence or argument. *See, e.g., Harris*, 491 F.3d at 447 (affirming exclusion of evidence that defendant was a "dedicated family man"); *Washington*, 106 F.3d at 999 (affirming exclusion of defendant-police officer's commendations relating to defendant's professional "dedication" as not pertinent traits); *United States v. Santana-Camacho*, 931 F.2d 966, 968 (1st Cir. 1991) (that defendant was a "kind person or a good family man" was not pertinent); *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (affirming exclusion of awards and commendations purportedly showing "bravery, attention to duty, perhaps community spirit" as non-pertinent character traits in conspiracy to commit mail fraud/perjury case); *United States v. Irving*, No. CR.07-107(PLF), 2008 WL 163653, at *1 (D.D.C. Jan. 18, 2008) (similar).

Under Rule 405, the defense cannot introduce specific good acts evidence to demonstrate Fortenberry's character traits. Section 1001 does not have the trait of untruthfulness as an element, nor would character for truthfulness be a defense to the charges in the indictment. Rather, the charges "simply require proof that defendant was untruthful in a discrete instance." *United States v. Covington*, No. 3:23CR68 (RCY), 2023 WL 8482581, at *3 (E.D. Va. Dec. 7, 2023); *United States v. Mixon*, No. 14CR00631-001-TUCJGZ, 2015 WL 13849032, at *3 & n.3 (D. Ariz. Dec.

11, 2015) ("[T]he character trait of honesty is not an element of 18 U.S.C. § 1001[.]").  Even if the jury heard (and believed) that defendant was generally honest, the jury would still be free to find defendant nevertheless made the alleged false statements in the specific instances charged in the indictment.

The same is true of any attempts to present specific examples of Fortenberry's general law-abidingness.  *See, e.g.*, *United States v. Ahmed*, 73 F.4th 1363, 1384 (11th Cir. 2023) ("[E]vidence of good conduct is not admissible to negate criminal intent.") (internal citations omitted); *United States v. Chambers*, 800 F. App'x 43, 45 (2d Cir. 2020) ("A defendant may not seek to establish his innocence… through proof of the absence of criminal acts on specific occasions.") (internal citations omitted).[9]

As the above demonstrates, even assuming that Fortenberry can properly present reputation or opinion evidence about his character for truthfulness and law-abidingness, under no circumstances should the defense be able to present specific instances of any character trait, including truthfulness and law-abidingness.  To allow otherwise would not only run afoul of Rules 404 and 405, but it would also risk inviting nullification evidence and argument into the trial.  Thus, even if it was appropriate under any other rule (which it is not), its exclusion would still be warranted under Rule 403's balancing test.

---

[9] The *Chambers* court went on to note the obvious basis for this principle, stating "The reasoning behind this rule is straightforward: A single occurrence of lawful conduct is 'simply irrelevant' to other occurrences of unlawful conduct."  *Chambers*, 800 F. App'x at 45 (citing *United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999)).

## IV.    CONCLUSION

This is a case about whether an individual knowingly and willfully concealed material information and made a material false statement concerning a matter within the jurisdiction of the United States' Executive Branch.  The Court should prevent the defense from distracting the jury with irrelevant, improper, and inflammatory evidence and argument primarily geared towards nullification, such as baselessly suggesting that this prosecution is politically motivated or trying to present inappropriate character evidence.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052


By:    /s/ Timothy Visser
       TIMOTHY VISSER (DC Bar No. 1028375)
       Assistant United States Attorney
       601 D Street, N.W.
       Washington, D.C. 20530
       (202) 252-2590
       timothy.visser@usdoj.gov

       SUSAN HAR (Cal. Bar No. 301924)
       Special Assistant United States Attorney
       312 N. Spring Street, Suite 1200
       Los Angeles, CA 90012
       (213) 894-3289
       susan.har@usdoj.gov