UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**JEFFREY FORTENBERRY,**<br><br>*Defendant.* | Criminal No. 1:24-cr-221 (TNM)<br><br>Oral Argument Requested |

**CONGRESSMAN FORTENBERRY'S MOTION *IN LIMINE* TO EXCLUDE
OPINION TESTIMONY CONCERNING THE VERACITY OF STATEMENTS**

Congressman Fortenberry, through undersigned counsel, respectfully moves to exclude opinion testimony concerning the veracity of his prior statements under Rules 403, 602, 701, and 704 of the Federal Rules of Evidence. Congressman Fortenberry respectfully requests oral argument on this motion under Local Criminal Rule 47(f).

Congressman Fortenberry anticipates that the government will seek to introduce opinion testimony from one or more case agents that the Congressman made material false statements and omissions during his March 23, 2019 and July 18, 2019 interviews with government investigators, as alleged in the Indictment. Such testimony is inadmissible, highly prejudicial, improper government argument, and seeks to usurp the jury's role as a fact-finder. It should be excluded from the upcoming trial.

## BACKGROUND

At the prior trial, the government introduced recorded clips of Congressman Fortenberry's March 2019 and July 2019 interviews with government investigators. In between each clip, the government asked IRS Special Agent James O'Leary (for the March 2019 interview) and FBI Special Agent Edward Choe (for the July 2019 interview) to interpret the recorded statements for the jury, and also asked them to opine whether certain statements were false.[1]

In particular, the government asked Agent O'Leary to opine on the veracity of the Congressman's statements during the March 23, 2019 interview. For example, the Indictment alleges that during that interview the Congressman "falsely stated that the individuals who contributed to the 2016 Fundraiser were all publicly disclosed and that every campaign contribution that his campaign received was publicly disclosed." Indict. ¶ 21(a)(ii). In connection

---

[1] The government sought to bolster each agent's credibility with respect to the recordings by establishing that each had reviewed the entire recording extensively in advance of the trial. Ex. 1, Trial Day 5 Tr. 45:10-16 (O'Leary); *id.* at 200:12-16 (Choe).

with the Congressman's statement on the recording that "[e]very contribution that I have is publicly disclosed," the government asked Agent O'Leary:

> Q: Based on your involvement in the Federal investigation, did you suspect this statement was true or false?
>
> A: I suspected that statement was false.
>
> . . .
>
> Q: On what evidence did you base your suspected belief that the statement was false?
>
> A: That basis is founded on the recorded telephone call that Congressman Fortenberry had with [Individual H] on June 4 of 2018.
>
> . . .
>
> Q: Special Agent O'Leary, was this suspected false statement significant to your investigation?
>
> A: Yes, it was significant to our investigation.
>
> Q: Why was it significant?
>
> A: Well, it showed -- the June 4, 2018 telephone call provided knowledge to Congressman Fortenberry with respect to cash coming from Toufic Baaklini to [Individual H] and provided to his campaign and that the source of that -- those funds were probably Gilbert Chagoury and that he -- oh, and that the -- because Gilbert Chagoury was a foreign national that the -- that you couldn't have contributions from foreign nationals to your campaign and you couldn't also have conduit contributions coming into your campaign.

Ex. 1, Trial Day 5 Tr. 79:19-25, 80:14-17, 81:4-16.  The government introduced similar testimony with respect to other statements during the March 2019 interview.  *See id.* at 84:5-10, 85:5-17, 86:8-21 (O'Leary opining that the Congressman's statement denying knowledge of foreign national contributions was false); *id.* at 92:18-93:10 (O'Leary opining that the Congressman's statement that all donors were disclosed was false).

The government followed the same playbook during its examination of Agent Choe concerning the July 18, 2019 interview.  Agent Choe testified, for example, that Congressman Fortenberry's statements "did not accurately reflect the information that had been told to him

2

during the June 4, 2018 phone call from [Individual H]." Ex. 1, Trial Day 5 Tr. 217:24-218:5. Agent Choe was then asked to explain the differences to the jury:

> Q: How did it differ?
>
> A: There was no mention of $30,000 in cash that had been provided by Toufic Baaklini to [Individual H]. There was no mention about what [Individual H] had mentioned about giving that money to his -- to other people to donate at the defendant's campaign. Yeah, pretty much that.
>
> Q: How did it differ as far as Gilbert Chagoury is concerned?
>
> A: So what Dr. Ayoub had said during that call was, probably the money did come from Gilbert Chagoury. Here, there's only a reference that Gilbert wouldn't be involved.

*Id.* at 218:6-16. This occurred another five times with respect to a variety of different statements. *Id.* at 231:4-6 ("not accurate"); *id.* at 222:3-8 ("inconsistent"); *id.* at 233:7-19 ("inconsistent"); *id.* at 233:23-234:1 ("inconsistent"); *id.* at 249:22-25 ("inconsistent").

## ARGUMENT

The D.C. Circuit recognizes the "obvious dangers posed by the summarization of evidence." *United States v. Moore*, 651 F.3d 30, 56 (D.C. Cir. 2011) (quoting *United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983)). Allowing an agent to tie together the government's theory during the presentation of evidence "unfairly strengthens the government's case" and allows the government "an extra closing argument." *Id.* And where an agent is asked to opine "to the ultimate question of fact," "courts should be wary of opinion testimony whose sole function is to answer the same question that the trier of fact is to consider in its deliberations." *Id.* at 57 (quoting *United States v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005) (cleaned up)). These concerns, codified in Rules 403, 602, 701, and 704, require excluding any agent testimony as to the veracity of Congressman Fortenberry's statements.

Rule 701 requires, among other things, that lay opinion testimony be helpful to the trier of fact. This ensures that such testimony "does not so usurp the fact-finding function of the jury."

3

*Garcia*, 413 F.2d at 210-11.  Rule 602 states that a witness may testify only on matters where the witness has "personal knowledge," a requirement that is reiterated in Rule 701, which states that lay opinion testimony must be "rationally based on the witness's perception."  Rule 403 allows for the exclusion of evidence where the probative value is outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Although Rule 704 contemplates that an opinion "is not objectionable just because it embraces an ultimate issue," the commentary makes clear that Rule 704 is not intended to undermine the protections under Rule 701 and Rule 403, which together "afford ample assurances against the admission of opinions which would ***merely tell the jury what result to reach***[.]"  Fed. R. Evid. 704 advisory committee note (emphasis supplied).

In a case where the jury will need to decide whether Congressman Fortenberry made material false statements or omissions, *see* 18 U.S.C. § 1001, it is entirely inappropriate to allow the government's own agents to testify whether and why the statements alleged in the Indictment were false, or inconsistent with prior recorded statements or other evidence.

*First*, a government agent cannot tell the jury how to decide "the ultimate question of fact" with respect to a required element of the charged offenses.  *Moore*, 651 F.3d at 57.  Such opinion testimony is flatly inconsistent with the protections under Rules 701 and 403, as articulated in the commentary to Rule 704.

*Second*, it is highly prejudicial, misleading, and cumulative for the government to use a lay witness to repeatedly summarize the government's closing argument as to the allegedly false statements and material omissions.  Such testimony is properly excluded under Rule 403.

*Third*, the government agents have no personal knowledge as to what actually occurred during Congressman Fortenberry's 2016 campaign.  Under Rules 602 and 701, the agents cannot

4

opine on whether the Congressman's statements in 2019 accurately reflected what actually occurred with respect to the campaign contributions at issue. The agents cannot testify as to whether any illegal contribution occurred, whether any crime was committed, or what any individual said or did in the course of the Congressman's 2016 campaign. Any such statement would be based only on what the agents purportedly "found" or "determined" in the course of their investigation. But that does not satisfy the personal knowledge requirement under either Rule. *See Garcia*, 413 F.3d at 210–214 (police officer could not opine on results of investigation).

*Fourth*, to the extent the government seeks to offer opinion testimony evaluating whether the Congressman's statements in March 2019 and July 2019 were inconsistent with either (i) the Congressman's statements as reflected in prior recorded calls with the government's informant; or (ii) other evidence collected in the course of the government's investigation, such testimony is not helpful to the jury in any way under Rule 701, and is prejudicial, misleading, and cumulative under Rule 403.[2] The jury will hear and have access to the relevant recordings, and any other evidence introduced at trial, and will be perfectly capable of comparing the Congressman's statements to the other evidence to determine whether the statements were false, without the government's agents telling them what conclusion to reach.

## CONCLUSION

For the foregoing reasons, the Court should exclude lay opinion testimony concerning the veracity of Congressman Fortenberry's statements.

---

[2] Agent Choe and Agent O'Leary, in particular, cannot testify to the Congressman's June 4, 2018 statements for the additional reason that they lack personal knowledge, as required under Rule 602 and Rule 701. Agent Choe did not become active in the investigation until October 2018, Ex. 1, Trial Day 5 Tr. 182:10-13, and Agent O'Leary testified that his knowledge of the June 4, 2018 call was based only on his review of the recording, *id.* at 35:3-5. Neither had personal knowledge of the Congressman's June 2018 call with the government's informant.

Date: November 12, 2024

Respectfully submitted,

/s/ *Tobin J. Romero*
Tobin J. Romero (Bar. No. 461273)
Jonathan B. Pitt (Bar No. 479765)
Andrew P. Lemens (Bar No. 156487)
Kristen A. DeWilde (Bar No. 90012738, *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave SW
Washington, DC 20024
Tel: (202) 434-5000
F: (202) 434-5029
tromero@wc.com
jpitt@wc.com
alemens@wc.com
kdewilde@wc.com

*Counsel for Jeffrey Fortenberry*

6