UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**JEFFREY FORTENBERRY,**<br><br>*Defendant.* | Criminal No. 1:24-cr-221 (TNM)<br><br>Oral Argument Requested |

**CONGRESSMAN FORTENBERRY'S MOTION *IN LIMINE* TO
EXCLUDE TESTIMONY INTERPRETING PRIOR RECORDED STATEMENTS**

Congressman Fortenberry, through undersigned counsel, respectfully moves to exclude testimony seeking to interpret prior recorded statements under Rules 401, 403, 602, 701, and 704 of the Federal Rules of Evidence. Congressman Fortenberry respectfully requests oral argument on this motion under Local Criminal Rule 47(f).

Congressman Fortenberry anticipates that the government will attempt to introduce several audio and/or video recordings at trial, including recordings of the March 23, 2019 and July 18, 2019 interviews where Congressman Fortenberry made the allegedly false statements identified in the Indictment. If the prior trial is any indication, the government will seek to play excerpts of these recordings for the jury, and will utilize various case agents to interpret these excerpts and argue the government's case to the jury. Under binding D.C. Circuit authority, as well as Rules 401, 403, 602, 701, and 704 this testimony is inadmissible, highly prejudicial, and should be excluded from the upcoming trial.

## BACKGROUND

At the prior trial, the government introduced recordings of (i) April 9, 2018 and June 4, 2018 telephone calls between Congressman Fortenberry and the government's informant (identified as "Individual H" in the Indictment); (ii) Congressman Fortenberry's March 23, 2019 interview with government investigators at the Congressman's home in Nebraska; and (iii) Congressman Fortenberry's July 18, 2019 interview with government investigators in Washington, D.C.

The government introduced this evidence through FBI Special Agent Todd Carter (the 2018 calls), IRS Special Agent James O'Leary (the March 2019 interview), and FBI Special Agent Edward Choe (the July 2019 interview). Each agent testified about the extent of their involvement in the government's broader investigation. Ex. 1, Mar. 17, 2022 C.D. Cal. Trial Day 2 PM Tr. 87-97 (Carter); Ex. 2, Mar. 22, 2022 C.D. Cal. Trial Day 5 Tr. 31-34 (O'Leary); *id.* at 183-85 (Choe).

Each also testified that they had heard the recorded statements in real time, and then subsequently listened to the respective recording(s). Ex. 1, Trial Day 2 PM Tr. 29:9-14, 30:10-25, 40:13-41:6 (Carter); Ex. 2, Trial Day 5 Tr. 45:10-16 (O'Leary); *id.* at 200:12-16 (Choe) (testifying he had listened to the entirety of the two-hour interview "multiple times").

As the government introduced each recording in bits and pieces, it stopped to ask the testifying agent a series of questions to emphasize statements favorable to the government. *E.g.*, Ex. 1, Trial Day 2 PM Tr. 50:9-12 (Carter) ("Did you hear the defendant's response . . . .?"); Ex. 2, Trial Day 5 Tr. 60:2-5 (O'Leary) ("At the end of this clip, did you hear the defendant say . . . ?"); *id.* at 206:22-23 (Choe) ("In that clip, did you hear the defendant reference 'IDC'?").

The government also frequently highlighted statements that the Congressman did not make during each audio segment. *E.g.*, Ex. 2, Trial Day 5 Tr. 59:15-60:1 (O'Leary) ("Q: Did you hear the defendant say at any point in this clip that [Individual H] hosted a fundraiser for him in Los Angeles in 2016?  A: No."). And the government asked Agent Choe to opine whether statements were made during the entire interview, even though only clips were played for the jury. *Id.* at 219:19-220:8 ("Q: During the two-hour interview, did the defendant ever say that he had a bad connection during his phone call with Dr. Ayoub?  A: No."); *id.* at 255:18-256:13 ("Q: Agent Choe, during the Nebraska interview, did the defendant ever tell the Federal investigators that [Individual H] mentioned or referenced Toufic Baaklini multiple times during the June 4th call? A: No.").

Before restarting the tape and playing the next clip, the government nearly always asked the agents to interpret the recorded statements for the jury. The government, for example, repeatedly invited the agents to opine on the Congressman's knowledge and intent, which they did. Ex. 1, Trial Day 2 PM Tr. 50:13-20 (Carter) ("At the time it appeared that he knew about the

2

illegal campaign contribution.  He was going to ask him again for another."); *id.* at 54:7-13 ("It could possibly indicate a conspiracy between . . . Congressman Fortenberry and Toufic Baaklini and Gilbert Chagoury."); *id.* at 54:19-55:1 ("[I]t sounded like he was aware of an illegal campaign contribution to his campaign in 2016."); *id.* at 62:3-6 ("My suspicions was they were in a conspiracy to commit another illegal campaign contribution."); Ex. 2, Trial Day 5 Tr. 70:1-3 (O'Leary) ("Based on the defendant's responses to that point, did you believe that the defendant was trying to help?").[1]

The government also asked the agents to interpret the Congressman's statements for the jury.  *E.g.*, Ex. 2, Trial Day 5 Tr. 67:21-24 (O'Leary) ("When you heard the defendant say, 'But that's not him, but that's not him,' what did you understand him to be saying?"); *id.* at 66:11-19 (O'Leary) ("When the defendant said he had to go double check the names because he didn't recognize the face, what did you understand that to mean?"); *id.* at 227:8-17 (Choe) ("What did you understand the defendant to be saying he did or did not do because of the concerning comment.").  And the agents were repeatedly asked to clarify or explain non-coded and non-technical language in the recordings.  *E.g.*, Ex. 1, Trial Day 2 PM Tr. 33:23-34:1 (Carter) ("[W]hose idea was the second fundraiser in that call?"); Ex. 2, Trial Day 5 Tr. 63:21-23 (O'Leary) ("And was this a reference to Toufic Baaklini?"); *id.* at 56:3-4 ("What organization is that?").

Although the agents were each privy to information obtained during the broader investigation[2], the government still asked each to explain aspects of the recorded interviews based on their experience with the investigation, including with respect to the Congressman's knowledge. *E.g.*, Ex. 2, Trial Day 5 Tr. 250:22-251:12 (Choe) ("And as the case agent, are you

---

[1]     The court sustained the Congressman's objection to this last question.  *Id.* at 70:1-7.

[2]     Agent Choe testified that that there were "ongoing and confidential" aspects of the same investigation.  Ex. 2, Trial Day 5 Tr. 192:7-9.

3

aware of evidence that the defendant, in fact, had this understanding of the relationship between Mr. Baaklini and Mr. Chagoury?"); *id.* at 214:20-22 (Choe) ("And based on your knowledge and role in the Federal investigation, was Mr. Chagoury connected to IDC?"); Ex. 1, Trial Day 2 PM Tr. 47:6-9 (Carter) ("[D]oes Chagoury have a relationship with Baaklini in your investigation?").

All of this commentary regarding the recordings was improper.

## ARGUMENT

### I. Rule 701 Prohibits Government Agents from Interpreting Recorded Statements.

Rule 701 requires that opinion testimony from a lay witness is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Testimony from a government agent purporting to interpret recorded statements, like the testimony at the prior trial, fails under Rule 701. *See United States v. Suggs*, 146 F. Supp. 3d 151, 159-60 (D.D.C. 2015) (recognizing the existence in this District of "serious reservations about both the utility and appropriateness" of agents interpreting recordings).

*First*, Agents Carter, O'Leary, and Choe cannot interpret recordings based on their experience with the investigation. There is a substantial risk that they will "testif[y] based upon information not before the jury, including hearsay, or at the least, that the jury would think [they have] knowledge beyond what was before them[.]" *United States v. Hampton*, 718 F.3d 978, 982-93 (D.C. Cir. 2013) (cleaned up and citation omitted); *see also id.* at 981-82 ("Judicial scrutiny of a law-enforcement witness's purported basis for lay opinion is especially important because of the risk that the jury will defer to the officer's superior knowledge of the case and past experience with similar crimes."). This prohibition reflects "similar concerns the court has expressed with regard to the Government's use of overview and summary witnesses to anticipate or interpret evidence for the jury." *United States v. Williams*, 827 F.3d 1134, 1157 (D.C. Cir. 2016) (citing *United States*

4

*v. Moore*, 651 F.3d 30, 57 (D.C. Cir. 2011)). The Court should preclude the government from asking its agents to interpret recorded statements in light of their broader knowledge of the investigation.

*Second*, opinion testimony intended to clarify or explain the plain language of a recording is properly excluded under Rule 701 because it does not assist the jury in determining a fact in issue. *Hampton*, 718 F.3d at 983 n.3 ("Several courts of appeals have held that Rule 701 does not permit lay opinion testimony interpreting clear statements . . . or plain English words and phrases . . . ." (cleaned up and citations omitted)); *United States v. Miller*, 738 F.3d 361, 373-74 (plain error under Rule 701 to admit agent interpretation of "non-coded language"). It is well within the province of the jury—with the assistance of the government's summation, if necessary—to interpret the non-coded language in the government's recordings of Congressman Fortenberry.

*Third*, the government cannot ask its case agents to interpret what the Congressman knew, meant, or intended with respect to his own recorded statements. That runs afoul of both the knowledge and helpfulness prongs of Rule 701, as well as the personal knowledge requirement in Rule 602. Any such testimony is entirely speculative, as the agents simply cannot know what was inside the Congressman's mind, and certainly not what he intended to convey, with respect to any of the recorded statements. *See United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992) ("[T]he witness's opinion as to the defendant's knowledge will often not be 'helpful' within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant knew."); *United States v. Hauert*, 40 F.3d 197, 201-02 (7th Cir. 1994) (excluding "testimony about a defendant's state of mind, his intent or belief"); *see also Barnett v. PA Consulting Grp., Inc.*, 35 F. Supp. 3d 11, 21-22 (D.D.C. 2014) (applying *Rea* in an employment action).

\*   \*   \*

In light of the limits imposed by Rule 701, including those confirmed by binding D.C. Circuit authority, the government cannot ask Agents Carter, O'Leary, and Choe to interpret the recordings that form the basis of Congressman Fortenberry's allegedly false statements. This includes any testimony, described in detail above, concerning the Congressman's statements and intentions, as well as testimony explaining the plain language of the recordings. The prior trial was riddled with this inadmissible evidence. The Court should restrict the government's ability to do the same in this case.

## II.     Rules 401 and 403 Preclude Testimony As To What The Congressman Did Not Say.

As set forth in Congressman Fortenberry's pending motion to dismiss Count 1 of the Indictment, the Congressman did not have a duty to disclose to federal investigators during either the March 2019 or July 2019 interviews. *See* ECF No. 24 at 9-10; *see also United States v. Safavian*, 528 F.3d 957, 964-67 (D.C. Cir. 2008). In the absence of such a duty, testimony about what the Congressman did not say during either interview is entirely irrelevant, and thus properly excluded under Rule 401. There is also a considerable risk of prejudice and misleading the jury, such that the same testimony should be excluded under Rule 403. If the Court permits agents to testify about what Congressman Fortenberry did not say, it could mislead the jury into believing, incorrectly, that there is some duty to disclose to federal investigators, or that the Congressman did something wrong by not volunteering the information the government suggests was omitted.

## III.     Rule 403 Precludes Government Agents from Interpreting Recorded Statements.

Even if not otherwise excluded, the government's use of its agents to explain the government's case by interpreting recorded statements is independently barred by Rule 403. There is little, if any, probative value of such testimony, and any value is substantially outweighed by the risk of prejudice to Congressman Fortenberry.

For the same reasons discussed above under the Rule 701 analysis, the agent's interpretation of the at-issue recordings in a narrative and summary fashion is unlikely to have any probative value to the jury. But there is a considerable risk of prejudice, including (i) "the jury might treat the summary evidence as additional or corroborative evidence that unfairly strengthens the government's case"; and (ii) the opportunity for the government "to have an extra closing argument." *United States v. Moore*, 651 F.3d 30, 58 (D.C. Cir. 2011); *see United States v. Cooper*, 949 F.3d 744, 750 (D.C. Cir. 2020) ("[T]he witness may not usurp the jury's fact-finding function by summarizing or describing not only what is in evidence but also what inferences should be drawn from that evidence.").

The government's use of this testimony at the prior trial proves the prejudice to Congressman Fortenberry. At the prior trial, the government used Agents Carter, O'Leary, and Choe to argue its case to the jury at three separate points during the government's case-in-chief. The government sought to establish that the agents were intimately familiar with the tapes, the implication being that they were better positioned to interpret them than the jury. The government relied on the agents to emphasize excerpts of the recorded statements, to put a favorable gloss (to the government) on the Congressman's statements, to provide unnecessary explanations with respect to the plain language on the tape, and to otherwise narrate each recording, while also ascribing additional purpose and meaning to each interaction. Because this testimony, if allowed at trial, will invade the province of the jury, and allow the government early and improper argument, the Court should exclude the evidence under Rule 403.

## CONCLUSION

For the foregoing reasons, the Court should grant Congressman Fortenberry's motion.

Date: November 12, 2024                          Respectfully submitted,

/s/ *Tobin J. Romero*
Tobin J. Romero (Bar. No. 461273)
Jonathan B. Pitt (Bar No. 479765)
Andrew P. Lemens (Bar No. 156487)
Kristen A. DeWilde (Bar No. 90012738, *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave SW
Washington, DC 20024
Tel: (202) 434-5000
F: (202) 434-5029
tromero@wc.com
jpitt@wc.com
alemens@wc.com
kdewilde@wc.com

*Counsel for Jeffrey Fortenberry*

8