**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**JEFFREY FORTENBERRY,**<br><br>*Defendant.* | **Criminal No. 1:24-cr-221 (TNM)**<br><br>**Oral Argument Requested** |

**CONGRESSMAN FORTENBERRY'S MOTION**
**TO PRECLUDE THE USE OF SUBTITLES AND**
**VISUALS DURING CERTAIN AUDIO RECORDINGS**

Congressman Fortenberry, through undersigned counsel, respectfully moves to preclude the government from displaying scrolling transcripts and visuals during the playing of audio recordings of telephone conversations between Congressman Fortenberry and the government's informant ("Informant"), under Rules 403 and 611 of the Federal Rules of Evidence. Congressman Fortenberry respectfully requests oral argument on this motion under Local Criminal Rule 47(f).

The government intends to introduce at trial audio recordings of telephonic conversations between the Informant and Congressman Fortenberry as purported evidence that Congressman Fortenberry subsequently made false statements to federal agents when asked about those conversations. Congressman Fortenberry's ability clearly to hear, understand, and recall what he was told during those conversations is critical to the issue whether he knowingly made material false statements about those conversations. But rather than provide the jury with evidence of those conversations in a format remotely reflecting the manner in which Congressman Fortenberry actually experienced them, the government intends to use multimedia exhibits including not only the audio recordings of those conversations, but also rolling transcripts beneath pictures of the Informant and Congressman Fortenberry to simulate an in-person conversation and to suggest to the jury, misleadingly, that Congressman Fortenberry was able to see and understand the statements contemporaneously as clearly as the jury will be able to see and understand them at trial with the benefit of a written transcript. This is especially misleading given the poor quality of the cellular phone call and the use of the transcript to fill in inaudible portions of the conversations. These problems would be compounded if the government exposes this misleading portrayal of these key conversations to the jury multiple times, stopping and starting the recordings repeatedly while having witnesses repeat portions of them, when, in real time, the Congressman

only participated in them once, with no transcript, no ability to stop and play back, and no stops and starts with government lawyers and witnesses repeating what was said on the recordings.

Under Federal Rules of Evidence 403 and 611, this evidence is inadmissible and highly prejudicial, as it would leave jurors with an impression of the conversations that would be at odds with Congressman Fortenberry's actual experience. It would invite the jurors to step into Congressman Fortenberry's shoes as he responded to the government's questions, on the basis of the jurors' superior and repeated access to the words used by the Informant.  The scrolling transcript and visual aids should be excluded from the upcoming trial.

## BACKGROUND

In October 2015, the Federal Bureau of Investigation ("FBI") opened a criminal investigation into possible illegal campaign contributions involving Gilbert Chagoury, Toufic Baaklini, and the Informant.  Ex. 1, C.D. Cal. Mar. 17, 2022 Trial Day 2 AM Tr. 87-89, 93, 96, 104.  The FBI suspected that Mr. Chagoury, a foreign national, made illegal campaign contributions through the Informant and Mr. Baaklini to various U.S. political campaigns and officials.  *E.g.*, Ex. 1, Trial Day 2 AM Tr. 94-95, 100, 105-106, 119-120; Ex. 2, C.D. Cal. Mar. 17, 2022 Trial Day 2 PM Tr. 12:22-13:8.  Unbeknownst to Congressman Fortenberry, Mr. Chagoury likely provided $30,000 to Mr. Baaklini, who in turn gave the money to the Informant, who in turn gave the money to several straw donors, who contributed to Congressman Fortenberry's campaign at a 2016 fundraiser in California.  Ex. 3, C.D. Cal. Mar. 21, 2022 Trial Day 4 PM Tr. 12-14, 17.

The Informant initially lied to the FBI about his involvement in illegal contributions, *see* Ex. 1, Trial Day 2 AM Tr. 118, but later provided details to the government agents about illegal campaign contributions that he, Mr. Chagoury, and Mr. Baaklini conspired to make to U.S. political campaigns, including a $30,000 donation to the 2016 fundraiser for Congressman

Fortenberry, Ex. 1, Trial Day 2 AM Tr. 120, 126.   The Informant did not implicate the Congressman in the conspiracy.  *See* Ex. 4, C.D. Cal. Mar. 18, 2022 Trial Day 3 Tr. 17-18.

In March 2018, Congressman Fortenberry reached out to the Informant.  Ex. 2, Trial Day 2 PM Tr. 27:19-28:6.  Although the Congressman himself was not a subject of the investigation, the FBI secretly recorded the phone call between the informant and the Congressman that followed; when the Informant and the Congressman connected on April 9, 2018, the Congressman expressed his interest in another fundraiser and asked the Informant for possible dates that might work.  *Id.* at 28, 34.  The call gave the FBI no reason to suspect that the Congressman had participated in any criminal conduct.  *See id.* at 35.

The government agents therefore planned a second call: This time, the agents wrote talking points for the Informant, instructed the Informant to call Congressman Fortenberry and make allegations about underlying suspicious campaign contributions, and recorded, listened to, and transcribed the call that ultimately took place on June 4, 2018.  *Id.* at 35-41.

The government subsequently interviewed Congressman Fortenberry twice—first in Nebraska on March 23, 2019 (nine months after his June 2018 call with the Informant) and then in Washington D.C. on July 18, 2019.  The government alleges the Congressman made false statements during those interviews.

\*     \*     \*

At the prior trial, the government introduced recordings of the April 9, 2018 and June 4, 2018 telephone calls between Congressman Fortenberry and the Informant as the key underpinning of the government's claim that the Congressman's statements during the subsequent interviews were false.  Ex. 5, C.D. Cal. Exhibit 112 (April 9, 2018 call); Ex. 6, C.D. Cal. Exhibit 113 (June 4, 2018 call).  The exhibits containing the audio recordings were multimedia exhibits: Not only

did the jury hear the audio file from the conversation, they simultaneously saw a scrolling, highlighted transcript beneath pictures of the Congressman and the Informant, and those pictures themselves were highlighted during the portions of the audio recording in which the pertinent individual spoke. Ex. 5, C.D. Cal. Exhibit 112 (April 9, 2018 call); Ex. 6, C.D. Cal. Exhibit 113 (June 4, 2018 call). Watching and listening to those exhibits, it is clear that the transcript fills gaps in the audio during portions of the call that were effectively inaudible because of the poor cellular quality.

Although the previous trial court provided a limiting instruction to the jury, that instruction was focused on how the jury should address any discrepancy between the audio recording and the scrolling transcript, in light of the fact that the transcripts themselves were not evidence:

> So members of the jury, you may recall yesterday one of the last instructions I gave you is that throughout the course of this trial, you may actually hear a recording, and there would also be a transcript that accompanies it. It's the recording itself, the audio itself that is the evidence. The transcript is not the evidence. It's basically a visual aid. And the importance of that is that you have to make sure that what you are listening to is accurate, and if it turns out that you see any inaccuracy with the transcript, ignore the transcript because that's only intended as a visual aid.

Ex. 2, C.D. Cal. Trial Day 2 PM Tr. 32; *see also id.* at 42 ("Members of the jury, I would simply remind you of the admonition as to what the evidence is and what the evidence is not."); Ex. 7, C.D. Cal. Trial Day 1 PM Tr. 20:12-21:19 ("The transcript is a transcript that is prepared after the fact to try to help you to follow along, but it's not the evidence itself. And here's the bottom line takeaway. If you see any discrepancy or difference between what you're hearing in the audio and the transcript, go with the ear. Ignore your eyes in that regard. The transcript is not the actual evidence itself."). Thus, the instruction did not address—and could not adequately have addressed—the prejudicial impression those exhibits gave jurors who, unlike Congressman Fortenberry himself, were exposed to visual reinforcement and amplification of conversations that were harried and difficult to hear and interpret in real-time.

Although Congressman Fortenberry had only heard each of these calls once prior to being questioned about them at interviews 9 months and 13 months later, the government played and displayed both exhibits to the jury twice at the first trial: during FBI Special Agent Carter's testimony, Ex. 2, Trial Day 2 PM Tr. 32-59; and during the Informant's testimony, Ex. 3, Trial Day 4 PM Tr. 56-60, 67-73. And the government repeatedly stopped the recordings, had witnesses repeat portions of what was said on the recordings, and then started playing the recordings again. *Id.* Thus, by the time the jury considered whether the Congressman's after-the-fact statements in response to questions about his calls with the Informant were knowingly false, the jury had experienced those calls under conditions that differed markedly from those under which the Congressman had experienced those calls: They had seen rolling transcripts of even the portions of the conversations that were difficult to hear, so they did not have to rely upon their ability to hear a poor-quality cell phone call (as the Congressman did); they saw pictures of both participants of the call, which approximated the conditions of an in-person discussion (which was not the Congressman's experience); and they were exposed to these audiovisuals multiple times (whereas the Congressman experienced the calls just once).

## ARGUMENT

Pursuant to Federal Rules of Evidence 403 and 611, the government should not be permitted to show jurors scrolling transcripts and highlighted pictures of the Informant and Congressman Fortenberry as part of its presentation of audio recordings of conversations between the two of them, because their prejudicial effect upon the Congressman far outweighs any probative value such enhancements provide to jurors. The Congressman did not have the benefit of viewing subtitles or scrolling text while the government's Informant was using the FBI's talking points to attempt to slip casual mentions of purportedly illicit conduct into his conversation;

permitting the government to deploy this mode of emphasis at trial will leave the jury with the false impression that the Congressman heard and recalled every word spoken by the Informant in the phone call. This risk of prejudice is especially acute given that the quality of the cellular phone connection was poor, portions of the call were nearly inaudible, and the amount of time that elapsed between those calls and the pertinent interviews is many orders of magnitude greater than the time that will elapse between the time jurors would be exposed to this evidence, and the time when they would need to decide whether the Congressman's statements at the interviews were knowingly false.

This Court must exclude evidence whose risk of prejudice to Congressman Fortenberry outweighs its probative value. Fed. R. Evid. 403. And Federal Rule of Evidence 611 permits the Court to exercise reasonable control over the presentation of evidence to ensure such presentation is appropriately calculated to allow jurors to determine the truth. With respect to transcripts in particular, the Court "retains ample discretion to exclude transcripts in circumstances where the prejudice might outweigh their usefulness as an aid." *United States v. Holton*, 116 F.3d 1536, 1542 (D.C. Cir. 1997). This is just such a case: Presenting the jury with a scrolling transcript and highlighted pictures of the participants in the conversation will invite jurors to place themselves into the shoes of a hypothetical participant who had far greater clarity and understanding of the Informant's statements than the Congressman did in actuality. Thus equipped, the jury will then assess the veracity of the Congressman's subsequent interview statements in light of that misleadingly amplified view of the conversations.

Even as it has approved the use of transcripts in some circumstances, the D.C. Circuit has recognized the risk that "jurors may substitute the contents of the more accessible, printed dialogue for the sounds they cannot readily hear or distinguish on the tape and, in so doing, transform the

transcript into independent evidence of the recorded statements." *Holton*, 116 F.3d at 1540. That risk is heightened here, because the transcripts the government intends to use will transform casual phone calls (in which participants spoke over each other, and the Congressman took little note of what the Informant was saying) into formal conversations in which each printed word takes on a significance and permanence never understood or experienced by the Congressman.

This case is unlike any number of cases involving audio recordings offered as evidence of a defendant's allegedly illicit ***conduct itself***. In such cases, there tends to be little risk of prejudice to the defendant absent the existence of errors in (or disputes regarding the accuracy of) the transcripts, because the jury is not being asked to assess the veracity of after-the-fact statements about those conversations on the basis of those enhanced recordings. *See, e.g.*, *United States v. Morris*, 406 F. App'x 758 (4th Cir. 2011); *Holton*, 116 F.3d 1536; *United States v. Strothers*, 77 F.3d 1389 (D.C. Cir. 1996); *United States v. Collazo*, 732 F.2d 1200 (4th Cir. 1984); *United States v. Slade*, 627 F.2d 293 (D.C. Cir. 1980). The issue presented here is entirely different, because the critical issue here is whether Congressman Fortenberry's interview responses, months after his conversations with the Informant, constituted knowingly false descriptions of those conversations.

## CONCLUSION

For the foregoing reasons, the Court should grant Congressman Fortenberry's motion and preclude the government from using subtitles and visuals while playing for the jury audio recordings of the Congressman's conversations with the Informant.

Date: November 12, 2024                 Respectfully submitted,

                                        /s/ *Tobin J. Romero*
                                        Tobin J. Romero (Bar. No. 461273)
                                        Jonathan B. Pitt (Bar No. 479765)
                                        Andrew P. Lemens (Bar No. 156487)

Kristen A. DeWilde (Bar No. 90012738, *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave SW
Washington, DC 20024
Tel: (202) 434-5000
F: (202) 434-5029
tromero@wc.com
jpitt@wc.com
alemens@wc.com
kdewilde@wc.com

*Counsel for Jeffrey Fortenberry*