**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal No. 1:24-cr-221 (TNM)** |
| **JEFFREY FORTENBERRY,** | |
| *Defendant.* | |

<u>**UNITED STATES' OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS**</u>
<u>**COUNT ONE OF THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE**</u>

The United States of America, by and through the undersigned attorneys, respectfully submits its opposition to the Defendant's Motion to Dismiss Count One of the Indictment for Failure to State an Offense. *See* ECF No. 24 ["Motion"].

In Count One, the Defendant, Jeffrey Fortenberry, is charged with "knowingly and willfully falsif[ying], conceal[ing], and cover[ing] up by trick, scheme, and device material facts in a manner within the jurisdiction of the [United States] executive branch. ECF No. 1 ["Indictment"] ¶ 19. The linchpin of Fortenberry's motion is his incorrect claim that Count One charges *only* a "concealment" scheme that must plead a legal duty by which Fortenberry was required to "disclose" the truthful information. This assertion ignores what is actually pled and what the law requires. Count One unambiguously charges all three prongs set forth in 18 U.S.C. § 1001(a)(1)—to falsify, conceal, *and* cover up. The Indictment alleges various affirmative acts that Fortenberry took to execute that scheme, including by making false and misleading statements to federal investigators. *See id.* That is, Count One is based on both (i) affirmative *lies* by Fortenberry (not mere silence or passive nondisclosure), for which the government need not plead a duty to disclose, and (ii) Fortenberry's concealment of material facts, for which he had a duty to disclose because he chose to respond to investigators' questions during the interviews alleged in

1

the Indictment.  Because Fortenberry's motion is without merit, this Court should deny it in its entirety.

I.    <u>**Argument**</u>[1]

Fortenberry's entire motion is premised on a false predicate that ignores the well-pleaded allegations of the Indictment.  Right out the gate, Fortenberry claims that Count One "purports to charge a *concealment* offense[.]"  Motion at 5 (emphasis added).  Fortenberry repeats this claim throughout his motion, then proceeds to knock down this strawman by pointing to cases analyzing the duty-to-disclose element applicable to concealment-based violations of section 1001.  This argument fails for two reasons.

First, it fails because Count One does not merely allege a scheme based on concealment. Instead, it alleges a scheme to falsify, conceal, *and* cover up five material facts relating to his receipt of illegal contributions and knowledge of the same.  Indictment ¶¶ 19, 20.  The Indictment then identifies how Fortenberry executed that scheme; including that he: (i) made false and misleading statements to federal investigators in Nebraska; (ii) made false and misleading statements to federal investigators in D.C.; (iii) did not amend his FEC report regarding the 2016 Fundraiser; and (iv) did not return or disgorge the $30,000 in illegal campaign contributions he received until after his second interview with federal investigators.  *Id.* ¶¶ 17, 21.

For the falsification prong of section 1001(a)(1), the government need not plead or prove a duty to disclose.  For the concealment prong, it does.  The second reason Fortenberry's motion nonetheless fails in all respects is because the Indictment properly pleads a duty to disclose in connection with his concealment of material facts—that is, the duty to disclose that arises from

---

[1] The Government's Opposition to Defendant's Motion to Dismiss the Indictment (ECF No. 23), describes the applicable Factual Background and Legal Standard, which are incorporated herein by reference.

electing to participate in an interview and respond to questions on a specific topic posed to him by investigators.

### A.   A Section 1001(a)(1) Scheme for Falsifying Material Facts Does Not Require a Separate "Duty to Disclose"

Section 1001 proscribes several different types of fraudulent conduct, each of which constitute different means by which the statute is violated. *United States v. Stewart*, 433 F.3d 273, 319 (2d Cir. 2006); *see United States v. Craig*, 401 F. Supp. 3d 49, 63 (D.D.C. 2019) (recognizing holding in *Stewart*). At issue here is section 1001(a)(1). Whoever "knowingly and willfully falsifies, conceals, *or* covers up by any trick, scheme, or device a material fact" violates Section 1001(a)(1). 18 U.S.C. § 1001(a)(1) (emphasis added). To give full effect to the "trick, scheme, or device" prong of the statute, courts have found that a violation of this section requires the government to show that the defendant "committed affirmative acts constituting a trick, scheme, or device." *Craig*, 401 F. Supp. 3d at 63 (quoting *United States v. London*, 550 F.2d 206, 213 (5th Cir. 1977)).

Importantly, "the law is clear that that both the making of false statements [*i.e.*, falsifying] and the deliberate withholding of material facts in the face of a duty to disclose them [*i.e.*, concealing] can be among the necessary affirmative acts for scheme purposes." *Craig*, 401 F. Supp. 3d at 63 (citations omitted); *see also United States v. Hubbell,* 177 F.3d 11, 13 (D.C. Cir. 1999) (reversing district court's dismissal of the indictment where the indictment properly charged a section 1001 scheme based on acts of falsification and concealment); *Bramblett v. United States*, 231 F.2d 489, 491 (D.C. Cir. 1956) (holding that section 1001 indictment properly alleged that the defendant "did 'falsify by a scheme a material fact'" by filing a false designation that he had hired a clerk and then collecting the phantom-clerk's paychecks); *United States v. Saffarinia*, 424 F.

Supp. 3d 46, 61 (D.D.C. 2020) (indictment properly alleged a section 1001 scheme "that involved multiple false statements, omissions, and other acts").

For falsification, there is no requirement that the government prove a legal duty to disclose in the way that it must for an act of concealment. *See United States v. Bowser*, 318 F. Supp. 3d 154, 168 (D.D.C. 2018), *aff'd,* 964 F.3d 26 (D.C. Cir. 2020) ("A section 1001 violation predicated on concealment, as opposed to a false representation, requires the government to prove that the defendant had a legal duty to disclose the concealed information."); *United States v. Dale*, 782 F. Supp. 615, 626 (D.D.C. 1991) (distinguishing the "passive failure to disclose" or "mere silence in the face of an unasked question" from the affirmative act of deliberately failing to disclose material facts in the face of a duty to disclose such facts).

*United States v. Safavian*, 528 F.3d 957 (D.C. Cir. 2008), is of no help to the defense on this point. In his motion, Fortenberry analyzes only the D.C. Circuit's discussion of Count 2A, which alleged a section 1001(a)(1) concealment scheme based on the defendant's failure to disclose his official assistance to an individual (Abramoff) with whom the defendant had a potential conflict of interest. *See id.* at 962-65. The D.C. Circuit reversed Count 2A based on the government's failure to identify a duty to disclose. *Id.* at 965. Tellingly, however, the D.C. Circuit did *not* include Count 2C in its duty-to-disclose discussion, which alleged a section 1001(a)(1) scheme based on the defendant's affirmative *false statement* that Abramoff did all his work on Capitol Hill. *Id.* at 962, 963 n.4, 965. And that is because of what the above-described cases teach: a duty to disclose is not an element to prove acts to *falsify* by a scheme material facts under section 1001(a)(1).

The Government alleges that Fortenberry's scheme "falsified, concealed, and covered up" material facts. That is proper, permissible, and legally sufficient, and the defense cannot pretend

4

otherwise. *See United States v. Brown*, 504 F.3d 99, 104 (D.C. Cir. 2007) ("[I]t is well established that if a criminal statute disjunctively lists multiple acts which constitute violations, the prosecution may in a single count of an indictment . . . charge several or all of such acts in the conjunctive and under such charge make proof of any one or more of the acts, proof of one alone, however, being sufficient to support a conviction." (cleaned up)).  As explained below, the Indictment makes clear that Fortenberry is not charged with mere silence, the passive failure to disclose in the face of an unasked question, or unvolunteered information during the course of an interview about illegal campaign contributions.  He is charged with affirmatively making false statements.  For such acts, the Government need not plead an additional "duty to disclose."

### B.   A Section 1001(a)(1) Scheme for Concealing and Covering Up Material Facts Can Be Based on a Duty to Disclose Arising from Responding to Investigators' Questions

When a section 1001(a)(1) scheme is predicated on concealment, the government must plead a duty to disclose the information that was concealed.  *See Saffarinia*, 424 F. Supp. 3d at 58. It is well-established that such a duty to disclose arises when an individual chooses to respond to questions by federal investigators.  *See Craig*, 401 F. Supp. 3d at 53 ("Once [the defendant] chose to answer the Unit's questions about facts directly related to that inquiry and the underlying duty, and then again when he took up the banner of persuading the agency that its decision was wrong, he was obliged to be both truthful and complete."); *United States v. Cisneros*, 26 F. Supp. 2d 24, 42 (D.D.C. 1998) ("Since Cisneros responded to the questions, he had a duty to include all information necessary to make his statements truthful."); *see also United States v. White Eagle*, 721 F.3d 1108, 1117 (9th Cir. 2013) (explaining that "when a defendant responds to specific questions on a particular topic," conviction for concealment is proper); *Stewart*, 433 F.3d at 318

(holding that the defendant has a "duty to disclose the information he had regarding the circumstances of [a co-defendant's stock] trade" after he "he voluntarily agreed to speak with investigators" and the SEC "specifically inquired" about his knowledge on this topic).

The duty that arises from affirmatively responding to specific questions is easily distinguishable from a "passive failure to disclose or mere silence in the face of an unasked question." *Saffarinia*, 424 F. Supp. 3d at 60 (cleaned up). The latter is what was at issue in *Safavian*'s discussion of Count 2A, in which the defendant simply did not disclose or volunteer information in the absence of an asked question. *See Safavian*, 528 F.3d at 964-65. *Safavian* does not stand for the proposition that a defendant continues to lack a duty to disclose even after he chooses to respond to specific questions on a particular topic—he obviously does. *See Craig*, 401 F. Supp. 3d at 53 (distinguishing *Safavian*, which charged the "fail[ure] to volunteer information based on some undefined set of obligations," from the defendant who "chose to answer the Unit's questions about facts directly related to [the FARA inquiry] and was . . . obliged to be both truthful and complete . . . about the very sort of facts he was being asked about"). Likewise, here, Fortenberry elected to participate in voluntary interviews and "respond[] to specific questions on a particular topic" posed to him by federal investigators. *White Eagle*, 721 F.3d at 1117. That created a duty to disclose information. *Id.*

There is also no doubt that Fortenberry was made aware of the duty that attached to his decision to participate in the interviews. As Fortenberry was advised, he could have declined the interviews with the investigators altogether, and he could have declined to answer any particular question throughout the interviews (a right he exercised at certain points). And as he was advised, it was a crime to participate in the voluntary interview and then lie. *See* Indictment ¶¶ 21.a, 21.b

(statements made on each date "after being advised it was a crime to lie to the federal government").

Simply put, Fortenberry was on notice of what he could not do. Yet what he repeatedly chose to do was: participate in the interviews and then lie to and mislead the investigators in an attempt to conceal what he actually knew.

## C. Count One Sufficiently Pleads Fortenberry's Scheme to Falsify, Conceal, and Cover Up Material Facts

Count One properly alleges a section 1001(a)(1) scheme by which Fortenberry falsified, concealed, and covered up five material facts: that (a) Fortenberry's congressional campaign had received illegal contributions at the 2016 Fundraiser; (b) Fortenberry had become aware that his congressional campaign received illegal contributions at the 2016 Fundraiser; (c) Baaklini had provided $30,000 cash to Individual H for Individual H and Individual H's associates to contribute to Fortenberry's congressional campaign at the 2016 Fundraiser; (d) Fortenberry had become aware that Baaklini had provided $30,000 cash to Individual H for Individual H and Individual H's associates to contribute to Fortenberry's congressional campaign; and (e) Chagoury was the source of the $30,000 that Baaklini provided to Individual H for Individual H and Individual H's associates to contribute to Fortenberry's congressional campaign at the 2016 Fundraiser. Indictment ¶ 19.

The Indictment details four ways in which Fortenberry executed that scheme, including by making multiple false and misleading statements in two interviews. The Indictment specifically alleges that Fortenberry made such statements "after being advised it was a crime to lie to the federal government." Indictment ¶¶ 21.a, 21.b. Construed according to common sense, it is necessarily implied in the Indictment that the investigators asked defendant questions during the

interviews.  *Cisneros*, 26 F. Supp. 2d at 46 ("[I]ndictments "must be read to include facts which are necessarily implied by the specific allegations made.'" (quoting *United States v. Silverman,* 430 F.2d 106, 111–12 (2d Cir. 1970)).  Those questions gave rise to Fortenberry's duty to disclose.

*First*, Fortenberry made three false and misleading statements to federal investigators during the March 2019 interview in Lincoln, Nebraska.  Indictment ¶ 21.a.  He falsely told federal investigators that he was not aware of Baaklini ever making any illegal contributions, directing anyone to conduct illegal contributions, or providing money to anyone else to conduct conduit contributions to a political campaign.  *Id.* ¶ 21.a.i.  He falsely stated that the individuals who contributed to the 2016 Fundraiser were all publicly disclosed and that every campaign contribution that his campaign had received was publicly disclosed.  *Id.* ¶ 21a.ii.  And he misleadingly stated that he was unaware of any contributions made by foreign national to his campaign.  *Id.* ¶ 21a.iii.

*Second*, in July 2019, Fortenberry continued to perpetuate his scheme by requesting another interview in D.C., during which he made four additional false and misleading statements.  *Id.* ¶ 21.b.  He falsely stated that he was not aware of any illicit contribution made during the 2016 Fundraiser.  *Id.* ¶ 21.b.ii.  And he made three false or misleading statements regarding what Individual H had told him (or not told him) during the June 4, 2018 call and Fortenberry's supposed reaction or response to that call, including his claim that he would have been "horrified" if he had learned Baaklini provided Individual H with the money to contribute to the 2016 Fundraiser.  *Id.* ¶ 21.b.i, b.iii, b.iv.

*Third*, in directing federal investigators to his public FEC reports purportedly disclosing all contributors to the 2016 Fundraiser, *id.* ¶ 21a.ii, Fortenberry did so knowing that he had never caused his campaign to amend those reports with accurate information about the true (and illegal)

contributors and amounts.  *Id.* ¶¶ 17, 21.c.  And *fourth*, Fortenberry did not return or disgorge the illegal funds until after his two interviews with federal investigators.  *Id.* ¶ 17.

Fortenberry's last-ditch effort to dismiss Count One rests on a claim that he had no duty to amend the FEC reports for the 2016 Fundraiser.  This misses the point.  The Indictment clearly alleges that Fortenberry "falsified, concealed, and covered up by trick, scheme, and device [five] material facts."  *Those* are the items that—by trick, scheme, and device—Fortenberry either falsified and/or concealed in the face of a duty to disclose.  The import of Fortenberry's failure to cause his FEC reports to be amended is also plainly laid out in the Indictment: it is part of how Fortenberry executed his scheme.  *See* Indictment ¶ 21.c.  The failure to amend was part and parcel of Fortenberry's false statement to investigators in Nebraska that the contributors to the 2016 Fundraiser "were all publicly disclosed and that every campaign contribution that his campaign had received was publicly disclosed."  *See* Indictment ¶¶ 21.a.ii, 21.c.  By falsely directing federal investigators to his FEC reports—the same reports that he *knew* contained false information reporting only the conduits who supposedly contributed legal amounts at the 2016 Fundraiser— Fortenberry sought to mislead investigators, bolster his credibility, and ostensibly provide documented corroboration that Fortenberry, in fact, had not received (and was unaware of) the illegal contributions.[2]  The import of Fortenberry's failure to amend the reports is *not* that it was a mere passive failure to disclose; it is direct evidence of the charged scheme.  *Cf. Craig*, 401 F. Supp. 3d at 72 ("[T]here is no 'passive' failure to disclose because the omission allegations are part and parcel of the false statement allegations.").

---

[2] During the D.C. interview, Fortenberry further leaned into his reports, telling the federal investigators that he is "a lawmaker in charge of a political campaign," that he has "spent significant time in the FEC manual," and that "every night my treasurer and accountant does the Federal Election Commission report and sends it to me two weeks ahead of time and I review it line by line and I say why is this there? Why isn't this there? I do that myself."

The Indictment properly alleged numerous affirmative acts that Fortenberry took to execute his scheme to falsify material facts or conceal them when he had a duty to disclose.  Defendant's motion fails.

**II.    <u>Conclusion</u>**

For the foregoing reasons, the Government respectfully requests that the Court deny the Defendant's Motion to Dismiss Count One of the Indictment for Failure to State an Offense.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052


By:      <u>*/s/ Susan Har*</u>
SUSAN HAR (Cal. Bar No. 301924)
Special Assistant United States Attorney
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
(213) 894-3289
susan.har@usdoj.gov

TIMOTHY VISSER (DC Bar No. 1028375)
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2590
timothy.visser@usdoj.gov