UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEFFREY FORTENBERRY,<br><br>*Defendant*. | Criminal No. 1:24-cr-221 (TNM) |

**UNITED STATES' MOTION TO EXCLUDE INADMISSIBLE EXPERT TESTIMONY**

The United States of America, through the undersigned attorneys, respectfully moves to exclude the testimony of the defense's expert on "memory, attention, and cognitive aging." As explained below, the proposed expert testimony is irrelevant because it concerns matters within jurors' common knowledge and experience and thus will not aid the triers of fact. The proposed expert opinions are also insufficiently reliable as applied to this case. Their admission would waste time, confuse the issues, mislead jurors, and invade the jury's key provinces. The testimony should be excluded in its entirety, as it was in the prior proceeding in the Central District of California.

**I.      RELEVANT BACKGROUND**

On November 12, 2024, defense counsel notified the Government of its intent to present at trial the expert testimony of Professor Alan Castel, whom the defense describes as "an expert on the study of human memory, attention, and cognitive aging." *See* Ex. 1. In all material respects, the defense's expert notice is identical to the expert notice provided to the Government during the prior proceeding in the Central District of California. There, the trial court excluded Prof. Castel's testimony. *See* Ex. 2 at 4-6. This Court should do the same.

The defense's expert notice can be split in two parts. First, it describes general principles about which Prof. Castel may offer expert opinions. *See* Ex. 1 at 1-3. Second, it proposes having Prof. Castel apply those principles to the case through an "analysis" of the two Government

1

interviews of the Defendant and another interview of Government witness Jessica Furst Johnson. *Id*. at 3-4.

The first category does little more than use erudite terminology to describe common knowledge. For example, the descriptions under the first subheading ("Popular perception of memory is often inaccurate") can be simply summarized as stating that: memories can change; people can misremember things; stress can affect how someone remembers something; what people know and experience influences what they remember; if someone knows something is going to be important before they learn it, they may be more likely to remember it; and just because someone thinks they remember something accurately, does not mean that they do. *Id*. at 1-2. The plain-term content of the material under the second subheading ("Sources of encoding interference"), can be aptly summarized as: memory fades as we get older; and distractions can affect memory. *Id*. at 2. Much of the third subheading ("Memory erosion and contamination") boils down to: memory fades over time; memories weaken with age; talking about something a lot may affect one's memory of that the topic; and people sometimes remember the substance of something without recalling its source. *Id*.

The second part of the defense notice presents Prof. Castel's proposed expert testimony analyzing three pertinent interviews. *Id*. at 3-4. Ostensibly applying the technical principles articulated form the first half of the notice, Prof. Castel's assessments rest on a cascade of speculative assertions.[1] Parts of Prof. Castel's proposed analyses rely on hearsay statements or

---

[1] By way of example, Prof. Castel's analysis includes things like: "[t]he outcome of prior retrievals *can be* a different memory of the event, and that *may have* happened to Fortenberry;" "Fortenberry *might have* remembered a phone call that seemed concerning as a gist without remembering all the precise information conveyed;" Fortenberry's subsequent conversations "*could have* caused his memory to become even more gist-based;" the questioning of Fortenberry "*could* influence the manner in which Fortenberry attempted to retrieve information from his memory;" "the repetition of questions pertaining to the event *could* then change his memory of it, especially *if* the manner of the questioning caused stress; "Jessica Furst Johnson also *may have* experienced interference

other information from Fortenberry himself, while the analysis regarding Ms. Johnson's testimony veers into credibility determinations. *Id*.

Perhaps unsurprisingly, despite having held his doctorate in cognition psychology for twenty years, it appears that Prof. Castel has *never* testified as an expert witness in a criminal case. The defense's disclosure notes one single civil state court case in which Prof. Castel was deposed.[2]

In the prior proceeding, the Government moved to exclude Prof. Castel's testimony. The trial court granted the Government's motion and excluded it in its entirety. *See* Ex. 2. at 4-6. The court put the basis for the ruling succinctly, writing:

> In short, Dr. Castel appears to offer speculative opinions based on general memory principles, most of which are understood—or through the trial process, including cross-examination and closing argument, readily could be communicated—to ordinary jurors. The probative value of Dr. Castel's opinions is limited in light of the weak foundation upon which they are based and is substantially outweighed by the potential for undue prejudice, confusion, and delay.

*Id*. at 6. The court separately explained that "Dr. Castel's general opinions on memory are not admissible as expert testimony because the idea that memory fades or alters over time is a concept jurors understand without the need for expert assistance." *Id*. at 5. With respect to Dr. Castel's analysis of Fortenberry's interviews, the prior trial court noted that "Dr. Castel's specific opinions of Defendant's two interviews appear too speculative to hold much probative value." *Id*. As for the proposed analysis of Ms. Johnson's memory, the prior trial court stated, "Nor is his opinion on

---

from her memory of the calls she had had with Fortenberry;" where Johnson was at the time of her call with Fortenberry "*could have* interfered with her encoding of the information Fortenberry conveyed to her in that call;" and Johnson "*may not have* appreciated the importance of what Fortenberry told her," which "*could have* led her to fail to store contemporaneously a memory of important details of that call." Ex. 1 at 3-4. (emphases added).

[2] The Government's additional research suggests that Prof. Castel was deposed in two additional civil matters, one of which was resolved without the court considering his report. *See F.T.C. v. Publisher's Bus. Serv. Inc.*, Case No. 2:08-cv-620, 2017 WL 451953, at 6 (D. Nev. Feb. 1, 2017) ("Because I reach this conclusion while considering Dr. Levy's report and without considering Dr. Castel's report, I deny the parties' respective motions to exclude as moot"); *Porter, et. al v. NBTY, Inc.*, Case No. 15-cv-11459 (N.D. Ill. 2019).

Johnson's testimony admissible, as it appears to be little more than an expert attempt to undermine her credibility." *Id*.

II.     **RELEVANT LEGAL STANDARDS**

Federal Rules of Evidence 702, 703, and 704 set the basic parameters for the admissibility of expert testimony. The twin pillars of admissibility are relevance and reliability. *See generally Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (discussing *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 529 (1993)); *see also United States v. Neagle*, 471 F. Supp. 2d 152, 156-57 (D.D.C. 2007) ("As the D.C. Circuit has explained, the twin requirements for the admissibility of expert testimony are evidentiary reliability and relevance") (citing collected D.C. Circuit and D.C. District Court cases). The Court serves an essential gatekeeping function in excluding expert testimony if it is insufficiently relevant or reliable. *Daubert*, 509 U.S. at 592-93. The burden of showing the testimony is admissible rests with its proponent. *United States v. Libby*, 461 F. Supp. 2d 3, 6 (D.D.C. 2006) (citations omitted).

Reliability is assessed by examining the methodology and reasoning underlying the proffered expert testimony. *Ambrosini v. Labarraque*, 101 F.3d 129, 133 (D.C. Cir. 1996); *Daubert*, 509 U.S. at 592-93 (reliability inquiry focuses on "whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue"); *see also* Fed. R. Evid. 702 (proponent of the evidence must demonstrate to the court "that it is more likely than not" that the "testimony is based on sufficient facts or data; [is] the product of reliable principles and methods; [and] reflects a reliable application of the principles and methods to the facts of the case").

The relevance inquiry focuses on whether the proposed expert testimony is "a 'fit' to assist the jury in resolving an issue relevant to a case." *Libby*, 461 F. Supp. 2d at 6 (citing *Daubert*, 509 U.S. at 593). To determine whether reliable evidence is "a fit to assist the jury," courts consider

various factors, such as: "(1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility." *Id*. (citing *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006)).  Expert testimony "should ordinarily not extend to matters within the knowledge of laymen." *United States v. Boney*, 977 F.2d 624, 628 (D.C. Cir. 1992); *United States v. Fadayini*, 28 F.3d 1236, 1241 (D.C. Cir. 1994) ("Where the jury is just as capable of drawing correct conclusions as the witness possessed with special training, expert testimony is unnecessary"); *Libby*, 461 F. Supp. 2d at 7 (explaining that expert testimony "concerning knowledge within the province of the average juror" is generally inadmissible).  Expert testimony should also be excluded if it "would usurp the jury's role as the final arbiter of the facts, such as testimony on witness credibility and state of mind." *Id*. (citations omitted).

Rule 703 allows an expert to rely on otherwise inadmissible evidence "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."  But even in those limited circumstances, the proponent of the opinion may disclose the otherwise inadmissible evidence to the jury only "if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  Fed. R. Evid. 703.  In criminal cases, expert witnesses also must "not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."  Fed. R. Evid. 704(b).  This restriction reflects the fundamental maxim that "[t]hose matters are for the trier of fact alone."  *Id*.

Finally, the Court may exclude expert testimony "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.' Fed. R. Evid. 403; *see also Daubert*, 509 U.S. at 595 (explaining that because "[e]xpert evidence

5

can be both powerful and quite misleading," "the judge in weighing possible prejudice against probative force under Rule 403…exercises more control over experts than over lay witnesses").

### III. ARGUMENT

The trial court in the prior proceeding properly applied the standards governing expert testimony and correctly excluded Prof. Castel's proposed testimony in its entirety. Though this Court is not bound by that decision, application of the relevant rules to the proposed testimony invariably leads to the same conclusion: Prof. Castel's proposed expert testimony is inadmissible.

### a. Prof. Castel's Testimony Should be Excluded Because It Does Not Meet the Standards of Rule 702

Prof. Castel's proposed testimony does not meet requirements of Rule 702. The general principles he seeks to present reflect concepts that jurors can and likely do understand—*i.e.*, they are not helpful to the trier of fact and thus irrelevant. The analyses Prof. Castel seeks to provide are based on speculation—*i.e.*, they are unreliable.

The average juror understands the general principles that the defense intends to have Prof. Castel testify about, even if the average juror may not assign the academic terminology that Prof. Castel might employ. The defense's proposed testimony here closely resembles the testimony proposed by the defense in the analogous *Libby* case. After a thorough assessment, the District Court excluded the proposed testimony in *Libby*. *See generally* 461 F. Supp. 2d 3. It should do the same here. As Judge Walton explained in *Libby*:

> [O]n a daily basis the average juror is personally faced with innumerable questions of memory and cognition, as everyone in their daily lives is called upon to store, encode, and retrieve information he or she has been subjected to. Although the average juror may not understand the scientific basis and labels attached to causes for memory errors, jurors inevitably encounter the frailties of memory as a commonplace matter of course. . . Accordingly, the jury does not need a tutorial on the science of "content borrowing," "memory conjunction," or "source misattribution" errors to appreciate that people sometimes experience mistaken memories.

*Id.* at 12-13.

Several other courts have conducted the same assessment and properly carried out their critical gatekeeping function by excluding such proposed expert testimony on memory. *See, e.g.*, *United States v. Carter*, 410 F.3d 942, 950 (7th Cir. 2005) ("In general… jurors understand that memory can be less than perfect"); *United States v. Labansat*, 94 F.3d 527, 530 (9th Cir. 1996) ("It is common knowledge that memory fades with time."); *United States v. Burke*, No. 19-cr-322, 2023 WL 8019451, at *4 (N.D. Ill. Nov. 20, 2023) (proposed expert testimony that "memory is fallible, it can fade over time, and it can be refreshed[,] are within the realm of common experience and knowledge"); *R.D. v. Shohola, Inc.*, No. 3:16-cv-1506, 2019 WL 6053223, at *11 (M.D. Pa. Nov. 15, 2019) ("the notion that memories deteriorate over time is well within the understanding of a jury without the aide of an expert… Likewise, the concept that witnesses can vehemently recall events in a faulty matter is readily understood and is something that falls within the common experience of jurors."); *United States v. Shiraishi*, No. 17-cr-582, 2019 WL 1386365, at *5 (D. HI. Mar. 27, 2019) (proposed expert testimony "about how memories can fade over two years and how details can become somewhat inaccurate over that time…falls within the common knowledge of the average layman, and thus is improper testimony under Rule 702" (citing *Labansat*, *Carter*, *Libby*, and *United States v. Heine*, No. 3:15-cr-238, 2017 WL 5260784 (D. Or. Nov. 13, 2017)); *United States v. Redwood*, 216 F. Supp. 3d 890, 897-98 (N.D. Ill. 2016) (citing *Libby* at length and concluding that proposed expert testimony regarding memory is inadmissible under Rules 702 and 403).

It is true that, as a general matter, "the science of memory is well established and accepted in the scientific community." *See Libby*, 461 F. Supp. 2d at 8 n. 6. But that does not establish that it will be helpful to the trier of fact in this case. Moreover, Prof. Castel's threadbare application of that science to this specific case is not reliable as it rests on speculation and insufficient data,

7

and it does not consider alternative theories (like the possibility that Fortenberry *did* remember certain conversations and then *chose* to lie about them).

The burden of proving that Prof. Castel's testimony is admissible falls to the defense. It cannot meet that burden under Rule 702. The testimony should be excluded.

### b. Prof. Castel's Testimony Is Also Inadmissible Under Rules 703, 704, and 403

Prof. Castel's proposed testimony also fails to meet the requirements of Rules 703, 704, and 403.

Portions of the proposed expert testimony clearly rely on hearsay statements and information. *See, e.g.*, Ex. 1 at 3 (explaining that Fortenberry "retrieved his memory of [the June 2018] call several times" and that "Fortenberry stat[ed] that he could not remember certain details."). Self-serving hearsay is inadmissible. Even putting aside whether experts in the field would rely on such evidence to form their conclusions, presenting it to the jury would not help the jury evaluate the expert testimony and the prejudicial effect of the testimony would substantially outweigh its non-existent value. It is therefore inadmissible under Rule 703.

Prof. Castel's testimony basically amounts to a conclusion that Fortenberry *may* have genuinely mis-remembered or forgotten certain information. This is a key component of the likely defense that Fortenberry did not knowingly or willfully make false statements—and a key issue that the jury will need to decide. Prof. Castel's proposed testimony thus risks invading the province of "matters [that] are for the trier of fact alone." *See* Fed. R. Evid. 704(b).

Finally, as explained above, Prof. Castel's proposed testimony is not relevant because jurors are already familiar with the concepts of memory. Its probative value is non-existent. Meanwhile, there is a strong danger that allowing the testimony will waste time and cause undue delay. The proposed testimony also risks having the jurors set aside their own commonsense views on things such as witness credibility in the face of testimony presented under the guise of "expert

opinion." This would create a substantial risk of issue confusion, the jury being misled, and the Government being unfairly prejudiced. The testimony should therefore also be excluded under Rule 403. *See Libby*, 461 F. Supp. 2d at 18 ("Even if this Court concluded that [the memory expert's] testimony satisfied the requirements of Rule 702, which it cannot, the Court would still exclude the evidence under Rule 403 for several reasons").

### IV.   CONCLUSION

The expert testimony proposed by the defense will not assist the trier of fact. It is irrelevant and unreliably applied to this case. Its inclusion at trial would risk invading the province of the jurors, misleading them, and wasting time. For these and other reasons articulated above, Prof. Castel's proposed testimony is inadmissible and should be excluded.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:   */s/ Timothy Visser*
TIMOTHY VISSER (DC Bar No. 1028375)
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2590
timothy.visser@usdoj.gov

SUSAN HAR (Cal. Bar No. 301924)
Special Assistant United States Attorney
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
(213) 894-3289
susan.har@usdoj.gov