UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEFFREY FORTENBERRY,<br><br>*Defendant.* | Criminal No. 1:24-cr-221 (TNM) |

**CONGRESSMAN FORTENBERRY'S OPPOSITION TO THE
GOVERNMENT'S MOTION TO EXCLUDE EXPERT TESTIMONY**

Congressman Fortenberry, through undersigned counsel, respectfully submits this Opposition to the government's Motion To Exclude the Expert Testimony of Professor Alan Castel, Dkt. No. 47 ("Mot."). The government's Motion should be denied because Dr. Castel's testimony is necessary to provide critical context that will aid the jury in understanding both Congressman Fortenberry's and Jessica Furst Johnson's ability to recall the details of conversations in light of the unusual timeline of this case and the manner in which the jury will be exposed to evidence of the Congressman's earlier recorded conversations. The government concedes Dr. Castel's methods are reliable and accepted by the scientific community as a general matter, but contends his testimony will not be helpful to the jury, is not reliable as applied to the facts of this case, and would create prejudice that outweighs the probative value. For the reasons that follow, none of these criticisms is accurate.

1. ***Professor Castel's Planned Testimony***. Professor Castel plans to explain to the jury that prior memory retrievals and feedback from others tend to alter a person's memories, varying the motivation and ability to recall particular details, and leading the memories to become more gist-based. He intends to apply these concepts to interviews of Congressman Fortenberry and the testimony of Jessica Furst Johnson to explain how factors present in those interviews

implicate these concepts. This is especially critical to the Congressman's defense given the facts, timeline, and issues in this case.

As the Court is aware, the jury in this case will be charged with assessing whether Congressman Fortenberry made false statements during interviews with FBI and IRS agents, as well as DOJ prosecutors on March 23, 2019 and July 17, 2019, in light of what a government informant had told the Congressman during a secretly recorded phone call phone call that had occurred on June 4, 2018, more than nine and thirteen months earlier. In the course of multiple conversations regarding the June 2018 call that occurred between that call and the Congressman's March 2019 interview with the government, Congressman Fortenberry retrieved his memory of that June 2018 call and received feedback from others about its significance. During the March 2019 interview, agents subjected the Congressman to repetitive, suggestive, and stress-inducing questioning about the subject matter of the June 2018 call. This again occurred during the July 2019 interview, compounding the impact. Dr. Castel's testimony will help jurors understand the evidence to which they are exposed, because they otherwise would be likely to assume improperly that memory works like a recording, and would thus assume from the recordings of the June 2018 call, the government's interviews of the Congressman, and Ms. Furst Johnson's testimony, that the Congressman must have lied to the extent his recollection in 2019 of the details of the June 2018 call differed from his statements on the recording of that call.

2. ***Professor Castel's Experience and Qualifications***. Dr. Castel is an expert on the study of human memory, attention, and cognitive aging. Mot., Ex. 1. The government does not (and could not credibly) argue that Dr. Castel lacks the necessary qualifications as an expert in that field: He is a full Professor of Psychology at the University of California, Los Angeles; he has an done critical research in, among other things, the areas of cognition, aging, and memory; he has

published hundreds of peer-reviewed articles, books, and book chapters on these topics; he has been invited to speak, and has spoken, at scores of academic and professional conferences on these topics; and serves on the editorial boards, and as a peer reviewer, of scores of academic and professional journals and organizations dedicated to the study of memory and cognition. *See* Ex. A, Castel CV.

3.   ***Professor Castell's Testifying Experience***.   The government's assertion that "despite having held his doctorate in cognition psychology for twenty years, it appears that Prof. Castel has *never* testified as an expert witness in a criminal case," Mot. 3 (emphasis in original), is curious: As the government knows from the first trial, Dr. Castel has in fact testified as an expert on memory-related subjects in no fewer than ***eight*** criminal trials. *See* Ex. B (filing in C.D. Cal. trial listing eight trials in which Dr. Castel has testified as expert witness on memory-related subjects).[1]  And aside from the decision in first trial in this case—which, as the government notes, is not binding on this Court, Mot. 6—Dr. Castel's testimony has never been excluded by a court. The government's suggestion that the extent of Dr. Castel's experience as an expert witness somehow suggests his methods are either unreliable, or inappropriate in this case, is flat wrong.

4.   ***Professor Castel's Proposed Testimony Meets the Standards of Rule 702***.   The government first argues that Dr. Castel's testimony should be excluded because it "seeks to present . . . concepts that jurors can and likely do understand," Mot. 6, relying primarily upon Judge Walton's decision in *United States v. Libby*, 461 F. Supp. 2d 3 (D.D.C. 2006). But the similarities between *Libby* and the instant case begin and end with the fact that both cases involved charges under 18 U.S.C. § 1001 and included no allegation that the defendant had any role in the alleged

---

[1]   As the government is aware, Rule 16 does not require the disclosure of trial or deposition testimony from more than four years in the past. Fed. R. Crim. P. 16(b)(1)(C)(iii).

3

underlying offense.  (In *Libby*, the government also charged the defendant with obstruction of justice, 18 U.S.C. § 1503, and perjury, 18 U.S.C. § 1623.  461 F. Supp. at 4.)  Most critically, in this case—unlike *Libby*—the government will present audio recordings of the conversations about which the Congressman is alleged to have made misstatements many months later, and if the government has its way, those recordings will be enhanced with visual aids and scrolling transcripts that will suggest to the jury that the Congressman had a far clearer ability to hear and recall the subject conversations than was in fact the case.  *See* Dkt. No. 38.

The government also cites to cases decided by the Seventh and Ninth circuits that supposedly excluded expert testimony related to memory for the same reasons the government argues Dr. Castel's testimony should be excluded here.  Mot. 7.  Neither case actually did so. *United States v. Carter* was a case about eyewitness identification, in which "potential problems in eyewitness identifications [were] brought to the jury's attention through cautionary instructions" multiple times, and "significant additional evidence" corroborated the identification of the defendant as the bank robber, such that there could be no prejudice from the exclusion of the expert testimony.  410 F.3d 942, 950-51 (7th Cir. 2005).

*United States v. Labansat* was even further removed from the issues in this case:  There, no expert testimony was excluded; rather, that case was an appeal of a district court's denial of a request of public funds to hire an expert on eyewitness identification, which required a showing, by clear and convincing evidence, that the defendant was prejudiced by the lack of funds for that purpose.  94 F.3d 527, 530 (9th Cir. 1996).  The court there held that the defendant had failed to make the requisite showing of prejudice ***not*** because "[i]t is common knowledge that memory fades with time" (though the court did make that observation), but rather because there were "numerous witnesses who identified Labansat as the bank robber, Labansat's vehicle was at the

4

scene of the . . . robbery and gloves matching those worn by the bank robber were found in his possession," which the court considered to constitute "overwhelming evidence of Labansat's guilt." *Id.*[2]

Here, expert testimony is essential to correct jurors' misperceptions about the ease of recalling events well in the past, when intervening conversations regarding those events have affected the subject's memory—topics not at all well-understood by the average juror. *See, e.g.*, Simons & Chabris, "What People Believe About How Memory Works: A Representative Survey of the U.S. Population," (PLOS ONE Aug. 3, 2011) (63% of laypeople believe, inaccurately, that

---

[2] In addition, most of the (out-of-circuit) district court cases to which the government cites, Opp'n 7, are either improperly described or distinguishable. And none, of course, is binding on this Court. The government's claim about why the court in *United States v. Shiraishi* excluded expert testimony on memory is inaccurate: There, the court did ***not*** exclude the testimony because it "falls within the common knowledge of the average layman" (that sentence appeared in a footnote and did not purport to characterize the court's holding), but rather because it was "simply not a fit for *this* case where the record does not show that Shiraishi's memory changed during the relevant time period." 2019 WL 1386365, at *6 & n.7 (D. Haw. Mar. 27, 2019) (emphasis in original). Indeed, the *Shiraishi* court was quick to note that "the court certainly agrees that, in the right case, [the expert's] testimony may aid a jury in understanding 'misinformation effect' and 'confidence inflation.'" *Id.* at *6. *United States v. Heine* based its ruling in part on the fact that— unlike the instant case—that case did "not involve . . . any argument . . . of suggestive or other improper questioning in the prior interviews of any of the witnesses or their prior statements that affected later recall." 2017 WL 5260784, at *2 (D. Or. Nov. 13, 2017). *United States v. Redwood* is another case about eyewitness-identification testimony, decided by a district court in a circuit that "has historically disfavored expert testimony regarding eyewitness perception and memory." 216 F. Supp. 3d 890, 894 (N.D. Ill. 2016). And *R.D. v. Shohola, Inc.*, a civil case, involved testimony excluded in part because the expert had no opportunity to observe the complaining witness but purported to conclude that the witness may have constructed false memories; because expert testimony debunking the repressed-memory theory did not fit the facts of the case, in which the plaintiff had not claimed to have recovered a repressed memory; and because the expert's conclusions were based upon "materially misstate[d] evidence." 2019 WL 6053223, at *11-13 (M.D. Pa. Nov. 15, 2019). None of that is true here. And none of the cases cited by the government ruled that expert testimony on memory or perception is inadmissible as a matter of law. To the contrary, as the *Libby* court itself ruled, "[t]here is no clear case authority, or absolute rule, on when an expert should be permitted to testify on issues regarding memory and perception." *Libby*, 461 F. Supp. 2d at 9; *see also, e.g.*, *Heine*, 2017 WL 5260784, at *3 ("The Court accepts that in certain cases testimony from an expert witness in human memory, perception, and cognition, especially one as eminent as Dr. Reisberg, may be entirely appropriate.").

"human memory works like a video camera, accurately recording the events we see and hear so that we can review and inspect them later")[3]; Kassam et al., "Misconceptions of Memory: The Scooter Libby Effect," 20-5 *Psychological Science* 551, 552 (2009) (laypeople "mistakenly expect [the motivation to remember] to be just as effective when it arises after information is encountered as when it arises beforehand").[4]

The government also purports to challenge Professor Castel's proposed testimony as "rest[ing] on speculation and insufficient data," and failing to "consider alternative theories" to explain purported discrepancies between the recording of the June 2018 call and the Congressman's statements at his interviews. Mot. 7-8. But the government never explains why or how Dr. Castel's observations based upon recorded interviews, as a trained and properly credentialed psychologist, are somehow not supported by sufficient "data"; and its claim that those opinions are "speculat[ive]" amounts to a complaint that Dr. Castel presented his observations in the conditional tense, discussing what "may" have occurred or what "could" influence memory under the circumstances present during the interviews of the Congressman and Ms. Furst Johnson. *Id.* at 2 n.1. But there is nothing speculative about Dr. Castel providing jurors with general (but not commonly known) concepts regarding how memory works and then applying those concepts to recordings, while making clear that he is **not** telling the jurors what they should conclude regarding witnesses' credibility or truthfulness during the interviews about which they will hear evidence in this case. And to the extent the government believes Dr. Castel did not "consider alternative theories," Mot. 8, such matters should be addressed by cross-examination, not exclusion.

---

[3] Available at https://tinyurl.com/4weym6ps.

[4] Available at https://tinyurl.com/5n6n2djh.

5. ***Professor Castel's Proposed Testimony Meets the Standards of Rules 703, 704, and 403***.  Beyond its objections based upon Rule 702, the government makes a series of conclusory arguments invoking Rules 703, 704, and 403.  The government complains, for example, that Dr. Castel's testimony would rely upon hearsay.  Mot. 8.  But the examples the government provides are all statements from the interviews the ***government itself*** intends to introduce into evidence at trial.  *Id.*  Such statements therefore already will be in evidence:  To the extent the government intends to introduce only other pieces of those interviews, the defense would of course be entitled to introduce the portions to which Dr. Castel refers, pursuant to the Rule of Completeness, "over [the government's] hearsay objection."  Fed. R. Evid. 106.  And even if such statements were not in evidence, as a qualified expert witness, Dr. Castel would be entitled to rely upon them to the extent experts in his field would reasonably rely upon such information, Fed. R. Evid. 703—a proposition the government does not challenge, Mot. 8.

The government next suggests that Dr. Castel's testimony would "risk invading the province of matters that are for the trier of fact alone."  Mot. 8 (cleaned up).  But Dr. Castel's testimony would not run afoul of Rule 704, because he would not be testifying about whether the Congressman "did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."  Fed. R. Evid. 704(b).  Rather, he would be assisting the jury by providing necessary scientific concepts to allow the jurors to assess for themselves whether the Congressman's alleged misstatements were made knowingly.  *Cf., e.g.*, *United States v. Bailey*, 319 F.3d 514, 521 (D.C. Cir. 2003) (testimony about general criminal practices for purposes of aiding jury in assessing defendant's mental state should not be excluded under Rule 704(b) so long as it is clear expert is not testifying based "on some special knowledge of the defendant's mental processes").

Finally, the government's claim that Professor Castell's testimony is inadmissible under Rule 403 is merely a retread of its earlier argument: The government claims that Dr. Castell's testimony would have *no* probative value, based upon its claim that ordinary jurors understand how memory works. Mot. 8-9. For the reasons already discussed above, it is simply not the case that laypeople have a proper understanding of how memory is affected by intervening events under circumstances such as those present here. Nor is there any risk that jurors will confuse testimony about how memory works with witness-credibility determinations.

*   *   *

For the forgoing reasons, the Court should deny the government's Motion To Exclude Expert Testimony, and should permit Dr. Alan Castell to testify in accordance with the disclosures the defense timely provided to the government.

Date: December 17, 2024

Respectfully submitted,

/s/ *Tobin J. Romero*
Tobin J. Romero (Bar. No. 461273)
Jonathan B. Pitt (Bar No. 479765)
Andrew P. Lemens (Bar No. 156487)
Kristen A. DeWilde (Bar No. 90012738, *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave SW
Washington, DC 20024
Tel: (202) 434-5000
F: (202) 434-5029
tromero@wc.com
jpitt@wc.com
alemens@wc.com
kdewilde@wc.com

*Counsel for Jeffrey Fortenberry*